### LEHIGH & H. R. RY. CO. v. MARCHANT.

(Circuit Court of Appeals, Second Circuit. January 25, 1898.)

No. 25.

1. NEGLIGENCE—PERSONAL INJURIES—DAMAGES.

A passenger was thrown from his berth in a sleeping car by a collision between trains, suffering a slight physical injury. Afterwards serious nervous injuries developed, which plaintiff claimed practically ruined his active life. There was some evidence that plaintiff suffered a severe fright,

and a medical expert testified that his present condition might have resulted from the fright. Defendant requested a charge that if plaintiff suffered a fright, but sustained no bodily injury whatever, he was entitled only to nominal damages. The court declined this request, but charged that, if the severe injuries were not the result of the fall and shock, plaintiff could only recover the trifling damages involved in the fall, and the consequent mental suffering, if any. The jury were also charged that, if the fall and shock did not produce the plaintiff's existing condition, and if that condition was due to other causes than the shock and injury which he received from the accident, he was only entitled to trifling damages. *Held,* that the request was, in substance, covered by the charge, and there was no error in refusing it.

2. SAME—EVIDENCE—MEDICAL EXPERTS.

A medical expert, in answer to a question as to what would be the probable future course of the disease with which plaintiff was suffering, said he thought he never would recover, "so far as to be capable of any sort of persistent occupation." *Held,* that the quoted part of the answer was not objectionable, as being a speculative opinion based upon an opinion.

This is a writ of error to review a judgment of the circuit court for the Southern district of New York, in an action at law brought by William E. Marchant, hereinafter called the plaintiff, against the Lehigh & Hudson River Railway Company, to recover damages for personal injuries occasioned by the negligence of the defendant, a railroad company and a common carrier of passengers. The jury returned a verdict in favor of the plaintiff for $25,000, and judgment was entered upon the verdict.

Austin Fox, for plaintiff in error.
Artemus B. Smith, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Between 3 and 4 o'clock in the morning of September 20, 1893, while the plaintiff was being carried as a passenger on one of the trains of the defendant, and was occupying a berth in a stateroom of one of its sleeping cars, the train came into collision with another train of the defendant, through its negligence. The plaintiff was thrown from his sleeping berth upon the floor of the sleeping car, fell upon his back upon a pair of shoes which lay on the floor, and sustained an injury, "which, according to his testimony, though not specially severe at the time, developed into so grave an injury to the spinal cord that it practically ruined" his active life. No question was made by the defendant upon the trial in regard to its negligence, nor in regard to its liability for some slight and unimportant injury which might have been received from the fall, but the nature, magnitude, and permanence of the ill effects which were claimed to have resulted from the collision were stoutly denied by the defendant, and to this subject the conflicting testimony was directed.

Upon cross-examination the plaintiff was asked, "Now, this accident: Were you badly frightened by it?" to which he replied, "Yes, sir." Upon cross-examination of the defendant's medical expert, who thought that the plaintiff was not suffering from an injury to the spinal cord, but from an injury in the brain, answers were made to cross-questions as follows:

"Q. To what sort of an injury in the brain do you attribute his present condition? A. Some emotional shock, or something of that kind. Q. Are there a variety of emotional shocks that might produce this trouble? A. Yes, sir. Q. Would a sudden fear of sufficient extent produce it? A. Yes, sir. Q. Might any great sudden nervous shock produce it? A. Yes, sir. Q. Might a shock to a passenger in a car, brought suddenly up with a terrific crash and a sudden shock, produce it? A. Yes, sir."

This was the whole testimony about fright or its effects. The defendant asked the court to charge the jury as follows:

"If the jury find as a fact that although the plaintiff suffered a fright, yet sustained no bodily injury whatever, then the plaintiff is entitled to no more than nominal damages."

The court declined to give this request, to which refusal exception was duly taken. By this request the court was asked to charge that the plaintiff could not recover substantial damages, whatever his condition at the trial, if, as a matter of fact, he sustained no bodily injury at the time of the collision, although he suffered a fright. The court declined to give this request, to which refusal exception was duly taken. An examination of the record shows that in the testimony and by the charge the case was made to turn upon the fact and the consequences of bodily injuries received at the time of the collision. These injuries were admitted to have been apparently slight at the time of the collision, but it was claimed by the plaintiff that grave consequences ensued from them. The defendant urged that the extent of the injuries was exaggerated, or possibly simulated, or that they must have been produced by other causes than the slight apparent injuries at the time of the accident. The court charged:

"If, upon the whole testimony, there is not a fair preponderance of evidence, sufficient to satisfy you that the injuries of which he complains were the result of the fall and shock which he received when thrown from his berth, then he is only entitled to recover, as I said before, for the trifling damages which are involved in the fall, and the pain and mental suffering, if there was any, consequent upon the fall."

The jury were also told that if the fall and the shock did not produce the plaintiff's existing condition, and if that condition was due to other causes than the shock and the injury which he received from the accident, then he was only entitled to recover comparatively trifling damages. The jury were thus informed that the suit was brought to recover damages for serious physical consequences which were claimed to have resulted from the injuries to the bodily, and not to the mental, system, which were received at the time of the collision, and, if the serious consequences did not result from these bodily injuries, the plaintiff's case had no importance.

But the defendant urges that by the request it was intended to press upon the attention of the court the principle which has been enunciated in some recent decisions, that, although physical ills resulted from the fright, a plaintiff cannot recover damages for such physical ills so resulting from fright caused by a negligent act, if no bodily injury was received at the time; and that the attention of the jury was not sharply directed to this point, and that they might have supposed that the plaintiff was entitled to damages resulting from any physical ills which grew out of the collision, whether they were caused by fright alone or by in-

jury to the bodily system. We may assume that the doctrine which is said to have been declared in Mitchell v. Railway Co., 151 N. Y. 107, 45 N. E. 354, Ewing v. Railway Co.. 147 Pa. St. 40, 23 Atl. 340, and in other cases, must have been presented to the trial judge, and that there was no misunderstanding as to the intent of the request; but it is also true that he expressly told the jury that, if the fall and the shock did not produce the plaintiff's existing condition, and if that condition was due to other causes than the shock and the injury which the plaintiff received from the accident, then he was only entitled to recover comparatively trifling damages; that is to say, unless there was a direct causal connection between the existing condition and the trifling injuries which immediately followed the fall, there could be no recovery for the serious injuries existing at the time of the trial. We think that the request, as intended to be made, was covered by the charge. We do not intend, as an appellate court, to express an opinion as to the soundness of the doctrine which was sanctioned in the cases cited supra. Dr. Charles Phelps, a medical expert, was examined in behalf of the plaintiff, and a part of the examination was as follows:

" 'Q. From your medical knowledge and experience, and from your examination of the plaintiff's case and his present condition, can you state what, in your opinion, with reasonable certainty, will be the probable course in the future of the disease with which he is now suffering? A. Yes; I think I can form an intelligent opinion.' Q. Please state your opinion. A. I think he will never recover, so far as to be capable of any sort of persistent occupation. Whether this disease will progress until it becomes a fatal disorder, within a reasonable length of time, say a few years. or not, I cannot say, and I have no opinion, because its course is variable. Q. As to the fatal termination of it, you have no opinion? A. As to the time of its termination. I could not state an opinion.' The counsel for the defendant thereupon moved to strike out the testimony of Dr. Phelps that, in his opinion, the plaintiff will never recover sufficiently to be able to follow any persistent occupation, insisting that the said testimony was speculative and conjectural, and too remote. The motion was denied, and the defendant's counsel excepted."

The refusal is made one of the subjects of error. It is not denied that the question was proper, but it is urged that the portion of the answer which was objected to was a speculation of the witness as to the possible effect of the probable course of the disease on the plaintiff's ability to "stand any sort of persistent occupation," and was an opinion upon an opinion. We do not so understand the character of the answer. The witness was asked the probable future course of the plaintiff's disease. He replied that he thought that the plaintiff would never recover, but, in order to state his opinion with the proper limitations and to place clearly before them his opinion in regard to the extent of nonrecovery, he added, "so far as to be capable of any sort of persistent occupation." His opinion was, and it was proper that he should make it clear, that the plaintiff would not be confined to his bed, or would not suffer constant or increasing pain, and would not be deprived of all comfort or enjoyment in life, but would be unable to enter into any business which called for persistency or which required a steady pursuit. The naked answer, "I think that he will never recover," would not have clearly put before the jury the expert's opinion in regard to the future extent or character of the disease, and therefore it was proper for him to give his opinion with exactness. The answer

was not liable to the charge of being a second speculative opinion based upon a first opinion. The judgment of the circuit court is affirmed, with costs.