AHLRICH GOKEN ET AL. V. ELLA M. DALLUGGE.*

FILED MAY 18, 1904. No. 13,404.

1. **Review.** When it appears from a fair interpretation of the record that separate motions for a new trial were ruled upon by the district court, this court will not decline to consider separate petitions in error, merely because of a slight verbal inaccuracy in the order on the motions.

2. **Torts: HUSBAND AND WIFE.** The common law rule that a husband is liable jointly with his wife for torts committed by her in his presence, but which he did not instigate and in which he did not participate, but solely because of the marriage relation, does not exist in this state.

3. **Expert Testimony** must be based upon supposed facts of the existence of which there is evidence before the court.

ERROR to the district court for Butler county: SAMUEL H. SORNBORGER, JUDGE. *Reversed.*

* Rehearing allowed. See opinions, pp. 22, 23, *post.*

*Arthur J. Evans, C. M. Skiles, C. H. Aldrich* and *E. C. Strode,* for plaintiffs in error.

*L. H. Hastings, Matt Miller* and *A. M. Walling, contra.*

AMES, C.

This is an action in which the defendant in error, as plaintiff in the court below, recovered a judgment in an action for damages against a husband and wife for an assault committed by the latter in the presence of the former, but without his instigation or consent and in disobedience to his expressed wishes. In the view we have taken of the case, it is not necessary to state the facts in greater detail. The verdict and judgment were for the plaintiff, and there was a joint motion for a new trial, and also separate motions by each of the defendants and separate petitions in error. Afterwards, the court entered an order overruling "the motion of the defendants Ahlrich Goken and Antje Goken to set aside the verdict, and for a new trial." It is insisted that this record, because of the use of the singular number of the word "motion," does not show that the separate motions of the defendants were called to the attention of the court and ruled upon, and that therefore no error can be availed of in this court that does not affect both defendants. We think that this would be a too liberal interpretation of the record. All the motions were filed at the same time, several months before the order overruling them was made, and it seems to us more probable that the clerk should have committed the very slight mechanical oversight of omitting a final letter from one word, than that the defendants should have been at all their care and labor, without calling their motions to the attention of the court and procuring rulings upon them. It appears to us fair to infer from the record that, when the court denied the defendants a new trial, he consciously denied it to each as well as to both of them.

5

The first and most important question presented is, whether a husband is liable jointly with his wife for torts committed by her in his presence, but without his instigation and against his expressed wishes and protest. We think the answer should be in the negative. We are not clear, as counsel urges, and some of the authorities cited by him assert, that the husband's liability in such cases, at the common law, grew solely out of the marital rights which he enjoyed with respect to his wife's property, and her disabilities as respected a separate estate and the obligation of contracts. There is equal reason to suppose, we think, that it had its origin, in part at least, in the personal relations of the parties, in the indissolubility of the marriage, and in the idea of guardianship of the husband over his wife's person, and his right to chastise her moderately and restrain her of her liberty; from which his responsibility for her conduct, especially in his presence, would have been almost a necessary inference. But laws and customs, and prevailing sentiments, have as effectually abolished these latter mentioned incidents of the marriage, as have statutes enabling her to have and enjoy a separate estate, trade and business, and to contract concerning it, removed the former. The wife may now be "the head of the family" as respects homestead rights and exemptions, she is equally entitled with her husband to the guardianship of the offspring of the marriage, in case of separation, and she may have an absolute divorce with alimony, almost for the asking, because of "extreme cruelty," which falls far short of personal chastisement or restraint of liberty. Even if not divorced, public sentiment will not tolerate that she be compelled to abide with him, although she be destitute of provocation or excuse for doing otherwise; and his criticism of her conduct must not exceed approval by the refined manners of "polite society." We think that so nearly a complete "emancipation" of the wife must in an equal degree emancipate the husband also, and free him from obligations that were incident to a state of law and society that has van-

ished before the progress of modern ideas. As this court say in *Kerner v. McDonald*, 60 Neb. 663:

"The old common law idea of the oneness in the relation of husband and wife is fast disappearing. The identity of the woman is not lost in the husband; she is no longer under his domination or control. On the contrary, in law, husband and wife are now considered as equals. * * * The reason for the law of entirety having ceased, with the reason, the law itself is no more. It would seem clear that, taking the modern view of the marriage relation, there is no reason for the doctrine for estates in entirety."

And so as it is said in *Martin v. Robson*, 65 Ill. 129:

"The intention of the legislature to abrogate the common law rule, to a great degree, that husband and wife were one person, and to give the latter the right to control her own time, to manage her separate property, and contract with reference to it, is plainly indicated by these statutes. While they do not expressly repeal the common law rule, that the husband is liable for the torts of the wife, they have made such modification of his rights and her disabilities, as wholly to remove the reason for the liability. * * * A liability which has for its consideration rights conferred, should no longer exist when the consideration has failed. If the relations of husband and wife have been so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated, to hold him still responsible for her conduct. If she is emancipated, he should no longer be enslaved. * * * So long as the husband was entitled to the property of the wife and to her industry, so long as he had power to direct and control her, and thus prevent her from commission of torts, there was reason for his liability. The reason has ceased. The ancient landmarks are gone. The maxims and authorities and adjudications of the past have faded away. * * * The unity of husband and wife have been severed. They are now distinct persons, and may

have separate legal estates, contracts, debts and injuries. * * * Her brains and hands and tongue are her own."

*Culmer v. Wilson,* 13 Utah, 129, announces the same conclusion though upon slightly different grounds:

"The common law rule, it will be remembered, which made the husband liable for the wife's torts, proceeded upon the ground that as the husband succeeded *jure mariti* to the entire estate of the wife, real and personal, and to the right of her earnings, so that she could not respond in damages for any wrong which she might commit, it was but right that he should respond for her, so long as the coverture continued. Such being the reason of the rule, if a statute intervenes giving the wife, during coverture, the sole control of all property owned by her * * * with the right to use and possess the same, thus taking away entirely the reason of the common law rule, it would seem, on principle, that the rule itself ought to cease, though the statute makes no mention of the husband's liability for the wife's torts, or her rights to her own personal services."

In *Norris v. Corkill,* 32 Kan. 409, the supreme court of that state reach the same result. In New York, *Fitzgerald v. Quann,* 109 N. Y. 441, and perhaps some other states, a contrary doctrine prevails, though, except in New York, it does not appear to have been distinctly announced, and the decisions which seem to uphold it are sufficiently justified by the active participation of the husband in the tort of his wife. In several of the states his common law liability has been abolished by statute. We are of the opinion, therefore, that there is insufficient evidence to support the verdict against the husband.

The assault, which was unaccompanied by personal contact, but consisted in pointing a gun at the plaintiff in a threatening manner, was alleged, and proved to the satisfaction of the jury, to have occasioned a fright which caused miscarriage. The plaintiff afterwards suffered, as she testified, severe pains and physical disabilities ex-

tending over a period of more than a year from the time
of the assault to the date of the trial, and which she at-
tributed to the abortion, but it was not otherwise shown
that they resulted therefrom, except that she testified
that she had never previously been afflicted in like man-
ner or suffered a like mishap.  Without other foundation,
two competent physicians were produced as witnesses and
permitted to testify over objection as follows:

Dr. F. W. Lester.  Q.  From your reading, practice,
observation and experience, what would you say as to
whether or not a female having a miscarriage after a
period of nearly four months, as to whether or not it would
permanently affect the general health of a woman?

A.  It might do so and it might not.  It most always
affects them more or less, however.

Q.  In what way, doctor?

A.  In the way I have described as affecting their gen-
eral health, producing symptoms of lassitude and weak-
ness, pelvic pains, chronic discharges and conditions of
that kind.

Dr. R. G. Rich.  Q.  From your experience and obser-
vation as a physician, what effect does a miscarriage
have upon the health of a woman as to impairing her
health or not?

A.  I think that a woman who has had a miscarriage
is seldom, if ever, in as good physical condition after-
wards as she has been before.

We think this testimony should have been excluded.
It is not based upon a knowledge by the witnesses, ob-
tained by their own observation, or proved upon the trial,
of the circumstances of the premature birth, or of the
immediate physicial injury, if any, inflicted thereby upon
the plaintiff, nor what had been her personal habits, or
history, or treatment subsequently thereto.  It left the
jury to reason from effect to cause, rather than from cause
to effect, and to conjecture that, because in many cases
ailments such as the plaintiff complained of were caused
by miscarriage, they were caused by it in her case, al-

though it was not shown that other causes might not have produced the same illnesses.

There are other alleged errors complained of, but the foregoing appear to be sufficient for the present disposition of the case, and without discussing them, we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with law.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings in accordance with law.

REVERSED.

The following opinion on rehearing was filed November 2, 1904. *Judgment modified:*

**Review.**  A party will not be heard to complain in this court of the admission of testimony in the trial court, to which he made no objection or exception.

AMES, C.

This is a motion for leave to argue orally a motion for a rehearing from a decision in this case reported *ante*, p. 16. The error complained of is so manifest that oral argument could neither obscure it nor render it more plain, and would therefore be useless. The sole ground of the reversal as to the wife, Antje Goken, is the incompetency of the testimony of the physicians Lester and Rich, but we failed to observe at the time of preparing the opinion that this testimony was not objected or excepted to. If that fact was called to our notice on the argument, it failed to arrest our attention, and we also overlooked a brief mention of it in the brief accompanying the motion for a rehearing. The rule that a party cannot complain in this court of the admission of testimony to which he

has not objected and excepted is too well settled to require the citation of authorities in its support.

It is recommended that the former decision of this court, in so far as it reverses the judgment of the district court against the wife, the plaintiff in error Antje Goken, be vacated and set aside, and that as to her the judgment of the last named court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former decision of this court, in so far as it reverses the judgment of the district court against the wife, the plaintiff in error Antje Goken, be vacated and set aside, and that as to her the judgment of the last named court be affirmed.

JUDGMENT MODIFIED.

The following opinion on rehearing was filed April 19, 1905. *Judgment of district court reversed:*

**Action for Personal Injuries:** INSTRUCTION. In an action for personal injuries it is error to give an instruction allowing the jury to assess damages for permanent injuries or lasting impairment of health, unless there is evidence showing, with reasonable certainty, that such permanent injuries or lasting impairment of health were in fact sustained by the plaintiff.

LETTON, C.

This is a rehearing of this case formerly reported *ante,* pp. 16, 22. The facts are, perhaps, sufficiently related in the former opinion, but it may be well to state that, according to the plaintiff's testimony, the miscarriage did not result from fright alone, since it appears that, when the gun was pointed at her, she was apparently shocked for a moment by fright, and that she then turned and ran for some distance, until a corn crib intervened between her and the defendant. There was sufficient medical testimony to warrant the jury in finding that the plaintiff's

injuries were a direct result of the fright and violent physical exertion occurring at the same time.

After a careful examination of the record we are of the opinion that there was not sufficient evidence as to the existence of permanent injuries or lasting impairment of the plaintiff's health to justify the court in instructing the jury upon that point, or to warrant the jury in considering the same as an element of damage. The evidence upon this point is substantially set forth in the former opinion, and, tested by every criterion, is clearly insufficient.

It is insisted, however, by the plaintiff that the damages are not more than sufficient to fairly compensate the plaintiff for the injuries actually sustained and reasonably certain to be suffered by the plaintiff in the future, and therefore it was error without prejudice to submit the question of permanent injuries. The evidence shows that a physician was first called to the plaintiff on the 2d day of May, and that his last visit was upon the 8th day of May, when the plaintiff was still in bed, but recovering. That in all he made five visits. That from the time she was able to be about, until the time of the trial, the plaintiff was able to do her housework, and in addition to this that, during the fall of 1902 and the following winter, she husked corn during the corn husking season; that she helped in the farm work, and plowed, harrowed and hauled wheat, corn and hay, cut corn stalks and milked. It is no doubt true that the plaintiff suffered from the defendant's act, but the record shows she had been accustomed to help her husband in his farm work before the occurrence complained of, and was able to do outdoor work afterwards. The evidence falls far short of indicating such a condition of health as warranted a verdict for the amount given by the jury.

It is impossible to say how far the submission of the question of permanent injuries entered into the consideration of the jury in making up their verdict. The verdict is clearly excessive, unless based upon the theory that permanent injuries were sustained.

The judgment of the district court should be reversed and the cause remanded for a new trial.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.