# Mobile & Ohio R. R. Co. *v.* Christian Moerlein Brewing Company.

## *Damages for Killing Stock.*

### (Decided May 10, 1906. 41 So. Rep. 17.)

1. *Negligence; Proximate Cause; Injury to Animals.*—The negligence of the defendant's agents in permitting stock to escape from plaintiff's enclosure, not being the proximate cause of the killing of the animals by another railroad on a track over which defendants had no control, and some distance from the enclosure, and there being an intervening proximate cause, the defendants were entitled to the affirmative charg.

2. *Same; Notice of Use of Premises.*—Where it is shown that the enclosure from which the stock escaped was used as a beer warehouse, there is nothing to charge defendant with notice or knowledge that stock were kept there, or that an opening made would enable stock to escape, hence no injurious consequences could reasonably have been contemplated by the defendant as the result of the act complained of, and there can be no recovery therefor.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

This was an action begun by appellee to recover of appellant the sum of $1,000 for the killing of three mules and two horses. There was considerable pleading in the cause unnecessary here to be set out. The case made by the testimony for appellee was: · That they owned and operated a large warehouse for the storing of beer contiguous to the tracks of the Mobile & Ohio Railroad Company in the city of Mobile. That in this warehouse a considerable number of horses and mules were kept when not engaged in delivering beer to the various customers throughout the city. There were two openings to the warehouse, inclosed by shutters or gates, one of which was used by the delivery wagons of the company, and the other of which contained a spur track construct-

[Mobile & Ohio R. R. Co. v. Christian Merlein Brewing Company.]

ed and operated by the Mobile & Ohio Railroad Company for the purpose of loading and unloading beer shipped by appellee from its brewery to its warehouse in Mobile and from its warehouse to its customers in the vicinity of Mobile. That on a certain Saturday night three mules and two horses were turned loose in the warehouse, and the wagon entrance was closed. At the time they were turned loose the spur track entrance was closed by a box car, so that the gate could not be shut, but while the car remained in the opening the stock could not escape. This opening remained in this condition from Saturday night to some time during the following Sunday night. On Monday morning following, these mules and horses were found at the crossing of the Louisville & Nashville Railroad Company track over One Mile creek in the suburbs of the city, three of them dead, and two so badly injured that they were afterwards killed by order of the Society for the Prevention of Cruelty to Animals. The defendant requested the court to give the affirmative charge after it had made a motion to exclude the testimony as being incompetent and immaterial and failing to make out a case. The court overruled the motion and refused to give the charge. The evidence further disclosed that at the point where the stock was killed, the Mobile & Ohio Railroad Company had no tracks, but that the track near which they were found was owned by the Louisville & Nashville Railroad, and that the Louisville & Nashville alone operated trains over these tracks. It was further shown by the testimony that no other railroad operated trains over the spur track entering the inclosure of appellee's warehouse, and that the switching crew of the Mobile & Ohio Railroad Company, who alone operated trains over this spur track, removed the car from the opening without closing the gate, which permitted the stock to escape. There was verdict for appellee, and judgment thereon.

E. R. RUSSELL and SYDNEY R. PRINCE, for appellant.— (Counsel discuss all the assignments of error and cite authorities to sustain them, but it is deemed unneces-

[Mobile & Ohio R. R. Co. v. Christian Moerlein Brewing Company.]

sary, in view of the opinion, to collate them except as to the points decided.)

The intervention of an independent responsible cause directly producing the damage makes the first cause too remote.—*A. G. S. v. Vail*, 38 So. Rep. 124; *Selma H. etc. Ry. v. Owen*, 132 Ala. 420; *L. & N. v. Quick*, 125 Ala. 553; *Williams v. Woodward Iron Co.*, 106 Ala. 254; *Western Ry. v. Mutch*, 97 Ala. 196.

The affirmative charge for appellant should have been given because:

(1) The allegation of negligence against appellant was, to-wit, Oct. 1st, 1902, the attempted proof of negligence was all as to Sept. 14 or 15, 1902. This was fatal variance.—*E. T. V. & G. v. Carloss*, 77 Ala. 443, at p. 447.

(2) All the evidence showed that the negligence complained of was not the proximate cause of the damage.

(3) There was no proof that a switch engine or any engine killed the stock. Finding the stock dead beside the track would create no presumption that it had been killed by a train, in a suit against any other than the Railroad Co. beside whose track it was found.

PILLANS, HANAW & PILLANS, for appellee.—Refusal of defendant's request charge No. 3, by the court which constitutes the twenty-first assignment of error, was proper because the evidence wholly failed to show that the Louisville & Nashville Railroad Company had negligently caused the death of plaintiff's stock, damages for which are sought in this action, and there was therefore no proof in the case that there was any intervening, independent, responsible (culpable) cause for the death of the said stock, and the charge was therefore abstract. *Armstrong v. Ry. Co.*, 123 Ala. at 251; *McKelvin v. London*, 22 Ont. Rep. 70; *Pastene v. Adams*, 49 Cal. 87; *Hughes v. McDonough*, 43 N. J. L. 459.

Further, this charge wholly pretermits consideration of the important qualification of the intervening cause doctrine, that the chain of causation is not broken if the intervening cause is one that might reasonably have been

anticipated as the natural probable result of the original negligence—in other words was rather a consequence of the original cause, than a new and independent cause.— Thompson on Neg., p. 1089, Sec. 6; Watson on Dam. for Per. Inj. supra; *So. Ry. v. Webb*, (Ga.) 59 L. R. A. 109; *Mahogany v. Ward*, 16 R. I. 479.

ANDERSON, J.—In discussing what is or is not proximate cause in contemplation of law, our court lays down the rule for its determination to be, quoted from Mr. Cooley and others: "If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last proximate cause, and refuse to trace it to that which was more remote. The chief and sufficient reason for this rule is to be found in the impossibility of tracing consequences through successive steps to the remote cause, and the necessity of pausing in the investigation of the chain of events at the point beyond which experience and observation convince us we cannot press our inquiries safely," etc. And we adopt what Addison says on the subject: "If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and damage are not sufficiently conjoined and concatenated as cause and effect to support an action." Cooley on Torts, p. 73, § 69. Mr. Bishop, in stating the same principle, says: "If, after the cause in question has been in operation, some independent force comes in and produces an injury, not in its natural or probable effect, the author of the cause is not responsible." Bishop on Noncontract Law, §§ 41, 42; Wharton on Law of Neg. § 75; Shearman & Red. on Neg. § 26. Again, it has been held that "the cause of an injury is in contemplation that which immediately produces it in its natural consequences; and therefore, if a party be guilty of an act of negligence which would na-

turally produce an injury to another, but before such injury actually results a third person does some act which is the immediate cause of the injury, such third person is alone responsible therefor, and the original party is not responsible, even though the injury would not have' occurred but for his negligence."—16 Am. & Eng. Ency. Law, 436, 446, note. Many cases are referred to by these authors as illustrative of these rules; and in *Lewis v. Flint,* 54 Mich. 55, 19 N. W. 744, 52 Am. Rep. 790, COOLEY, C. J., discusses at length and refers to many adjudged cases on the subject in a case similar to the one we have before us; and this is the doctrine of this court. In *Western R. Co. v. Mutch,* 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179, the principles above referred to and quoted were there also quoted and approved, the court, by STONE, C. J., adding: "The authorities from which we have quoted are everywhere regarded as standard. What they assert is but the condensation of the utterances of a very great number of the highest judicial tribunals, wherever the principles of the common law prevail," citing a number of these authorities. The same principles are recognized in our late case of *Armstrong v. Montgomery St. Ry. Co.,* 123 Ala. 233, 26 South. 349, where it is said: "The logical rule in this connection, the rule of common sense and human experience, as well, * * * is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have though reasonably possible to follow, if they had occurred to his mind"—citing Shear. & Red. Neg. § 29. See, also, *Ala. Gr. So. Ry. Co. v. Arnold,* 80 Ala, 600, 2 South, 337; *L. & N. R. R. Co. v. Quick,* 125 Ala. 553, 28 South. 14.

Applying the foregoing rule to the case at bar, the injury to the stock in question was through or by the means of an intervening cause and the law refers the damage to the last proximate cause, which the proof

shows to have been produced by an engine or car on the track of the Louisville & Nashville Railroad Company at the creek, and some distance from the place of escape and the network of tracks. The defendant's act may have been the remote cause of the destruction of the stock; but the law does not trace consequences through successive steps to a remote cause, when the injury can be ascribed to some intervening proximate cause. The fact that the stock were at large with the knowledge and consent of the owner would not deprive the owner of the right to recover for their wrongful destruction.—*L. & N. R. R. Co. v. Kesley*, 89 Ala. 287, 7 South. 648; *S. & N. R. R. Co. v. Williams*, 65 Ala. 74; *A. G. S. R. R. Co. v. Jones*, 71 Ala. 487. In the *Kesley Case, supra*, this court says: "However the horse came to be at large, the mere fact that he was allowed to go at large was not the direct, moving, proximate cause of his death; and the fact of negligence vel non in allowing him to be at large is one with which the jury has no concern, since no determination of that issue could have defeated a recovery on the one hand or increased plaintiff's damages on the other. It was a matter beyond the issue. In other words, the court properly refused to submit it to the jury in any form." Therefore, if the act of the owner in permitting the stock to be there was not the proximate cause of the injury, we are unable to perceive upon what theory the act of defendant in permitting them to escape from the inclosure can be ascribed as the proximate cause of their destruction. We need not consider the question of the surrounding conditions at the opening through which they escaped as affecting the application of the foregoing principles to the case at bar, as the injury occurred beyond and after the stock had gotten over the net work of tracks. Besides, while there was evidence of considerable passage and switching of trains opposite this opening in the daytime, there was nothing to indicate that this went on at night. Furthermore there is not a particle of evidence to charge the defendant with any knowledge that the opening made would enable the stock to escape, or that it knew the stock were there, or that the lot

was used as a horse lot. The place inclosed was a warehouse, used by plaintiff as a beer depot, and in the absence of evidence to the contrary the inference could hardly be possible that it was used as a horse lot. The rule of contemplation of consequences seems to be "that a defendant is not liable in negligence where no injurious consequences could reasonably have been contemplated as the result of the act or omission complained of, but is liable where injuries might have been anticipated or foreseen." 21 Am. & Eng. Ency. Law (2d Ed.) 486.

Since the trial court erred in refusing the general affirmative charge requested by defendant, we need not consider the other assignments of error. The judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.

WEAKLEY, C. J., and TYSON and SIMPSON, JJ., concur.