# Ala. Fuel & Iron Co. *v.* Baladoni.

### Action for Injury to Wife.

(Decided November 28, 1916. 73 South. 205.)

1. **Damages; Fright; Personal Injury.**—Damages are recoverable for physical injury directly caused by fright which was proximately caused by defendant's negligence.

2. **Negligence; Proximate Cause; Fright.**—Where the firing of a pistol in the presence of a woman caused fright, which in turn, so operated upon her nervous or physical system as to cause personal injury, the firing of a pistol rather than the fright was the proximate cause of the injury.

3. **Same; Anticipated Injury.**—Where a woman was ill and her condition might have been noticed by an ordinarily prudent man, mishap might have been anticipated as a contingency likely to happen on the firing of a pistol at a dog in close proximity to her child, in her presence.

4. **Damages; Fright; Public Policy.**—Where it clearly appears that an injury proximately resulted from fright wrongfully caused by an employee of defendant, plaintiff will not be denied recovery on the ground of expediency or public policy because of the danger of opening the door to fictitious litigation easily simulated.

5. **Master and Servant; Injury by Servant; Instructions.**—Where the action was against the mining company for loss for injury to plaintiff's wife resulting from the firing of a pistol at a dog in her presence by an employee

[Ala. Fuel & Iron Co. v. Baladoni.]

of the mining company charged with the duty of policing the camp, the court properly refused to instruct that plaintiff could not recover, if such employee merely stopped at plaintiff's house and asked if the men were at work, and then shot at the dog, which was not interfering or attempting to interfere with him, as such charge pretermitted consideration as to whether the employee's action was in the scope of his duty to police the camp.

6. Same; Evidence.—In such a case charges that neither the fact that such employee met trains to see the men, nor the fact that he had authority to see and ask if men had gone to work, would justify an inference that he had authority to shoot the dog, single out testimony, and were objectionable.

7. Same.—Instructions that if there was no evidence as to the duty of such police officer with reference to killing dogs, the jury could not speculate or infer that such officer would have authority on behalf of his employer to kill dogs, were argumentative.

8. Same.—Instructions that the evidence, if believed, showed that the killing of the dog was not unlawful, and that there was no evidence justifying a verdict for plaintiff for loss of his wife's services, were invasive of the province of the jury.

9. Charge of Court; Covered by Those Given.—It is proper to refuse instructions substantially covered by written or oral instructions given.

10. Appeal and Error; Review; Presentation Below; New Trial.—In the absence of a motion for a new trial raising that question, the correctness of the conclusion of the jury that the employee was acting within the scope of his employment in shooting the dog, could not be considered on appeal.

11. Master and Servant; Injuries by Servant; Dual Employment.—The fact that the employee of a mining company, charged with the duty of keeping order in the camp, was also commissioned as a deputy sheriff, did not relieve the company from liability for loss from injury to plaintiff's wife from fright caused by the acts of such employee in shooting at a dog in the presence of plaintiff's wife.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by Charles Baladoni against the Alabama Fuel & Iron Company. From judgment for plaintiff, defendant appeals. Affirmed.

The facts sufficiently appear. The following are the assignments of error relative to evidence:

(9) In overruling defendant's objection to the following question asked the witness Marko Pilata: "Ask her if Self said anything to her when he passed her house."

(10) Answer to such question: "He asked her if the men were in the house, and she said, No."

(11) Overruling defendant's objection to the following question, asked the witness Marie Baladoni: "Ask her what, if anything, Self said at the time he rode on his horse and shot the dog."

[Ala. Fuel & Iron Co. v. Baladoni.]

(12) Overruling objection to the following question asked the same witness: "Ask her what company they were working for where they were."

(13) Overruling defendant's objection to the following question to the witness Charles Baladoni II: "Ask him how much he owes for doctor's bills."

(14) Overruling objection to the following question to same witness: "Ask him what else he saw him do up there besides rent houses."

The following charges were refused to defendant:

(18) The fact, if it be a fact, that Self, under his employment by defendant, met trains to see men would not justify any inference from you that he had authority to shoot the dog.

(19) The fact, if it be a fact, that Mr. Self had authority to see ánd ask if men had gone to work would not justify any inference from you that he had authority to shoot the dog.

(20) If there is no evidence before you as to the duties of a peace officer in reference to killing dogs, then I charge you that you can't speculate or infer, in the absence of such evidence, that such officer would have the authority on behalf of his employer to kill such dog.

(21) I charge you that under the evidence, if you should believe such evidence, the killing of the dog was not unlawful.

(22) There is no evidence that will justify in this case any verdict in favor of plaintiff for loss of services of his wife.

(16) The court charges the jury that if you believe from the evidence that Self was an agent of defendant and stopped at plaintiff's house and asked plaintiff's wife if the men were at work, and plaintiff's wife stated that they were, and this was all that occurred between them, and Mr. Self then turned and shot the dog, and the dog at this time was not in any way interfering, or attempting to interfere, with Self, then I charge you that plaintiff would not be entitled to recover in this case.

PERCY, BENNERS & BURR, for appellant. PERDUE & DRAKE, for appellee.

EVANS, J.—Appellee (plaintiff below) brought this action on the case to recover for the loss of the services of his wife, occasioned by the alleged negligence of appellant. The right of recovery is appropriately challenged; appellant's chief conten-

tion being that the damages in question were the result of a fright, and were not recoverable. Defendant introduced no testimony, and its version of the circumstances of the case are to be had only from its answers to interrogatories propounded to it under the statute, and which were introduced by the plaintiff. From these, it appears, the defendant's version of the matter was widely variant from that of the eyewitnesses of the plaintiff, which was accepted by the jury as the basis of its verdict. Briefly stated, the plaintiff's testimony was about as follows: Appellee was a miner, working for defendant at Margaret, a mining camp or village; there he rented a house from the defendant for himself and family, consisting of his wife, Marie, and a five-year-old daughter. One Self was employed by the company, who was charged with the duty of policing or keeping order in and about the camp, and also that of renting the houses. On the day of the wrong complained of, Self rode up to the home of appellee and inquired of his wife if he had gone to his work. While seated on his horse talking to the wife, who was then on the porch of her house a few feet away, Self shot the dog of appellee. According to the testimony of the two eyewitnesses—the wife and her next door neighbor—the dog and appellee's little girl were, at the time of the shooting, but a few feet apart, and both within a few feet of the steps to the porch where appellee's wife was. Self was then also but a few feet away from the dog, but further from it than he was from the child. The wife was enceinte, the allegation of the complaint being that she was far gone in pregnancy. The shooting of the dog, under the circumstances of its occurrence, so unnerved and upset the wife that she took to her bed, and the following day had a miscarriage. From this, it is alleged, she has never fully recovered, and is still unable to attend to her household duties; she was confined to a hospital three months, and appellee, besides losing the society of his wife, incurred and paid out upwards of $400 in and about her medical treatment.

Counsel for appellant, following a long line of decisions to that effect, earnestly insist that damages for injuries superinduced by fright are not recoverable. It may be justly said that the decisions on this subject, both English and American, and particularly the latter, are in irreconcilable confusion.

(1) Counsel respectfully insist that this court fell into "grave error" in promulgating the doctrine announced in the case of *Spearman v. McCrary*, 4 Ala. App. 473, 58 South. 927, and urge

upon us to recede from that case and disaffirm the holding therein. Upon petition to the Supreme Court, a writ of certiorari to review this case was denied.—*Ex parte Spearman,* 177 Ala. 672, 58 South. 1038. After careful examination of a great number of authorities pro and con, we are of opinion that the conclusion reached by the learned judge in *Spearman's Case, supra,* accords with the better considered cases. It is our opinion that physical injuries directly caused by fright, which was the proximate consequence of defendant's negligence, are recoverable, and may be sustained both in reason and on principle.

The authorities holding that such damages may not be recovered may be summarized as grounding their opinions on the following reasons: (1) It is argued that since there can be no recovery for fright alone, it must necessarily follow that there can be no recovery for the consequences of fright; (2) that physical injury resulting from fright caused by negligence is not the proximate result of the negligence; and (3) that on the ground of expediency or public policy, recovery should be denied because of the danger of opening the door to fictitious litigation, easily similated, and the impossibility of estimating the damages.

(2, 3) Assuming the facts to be as testified by the eyewitnesses, it cannot be contended that in shooting the dog on appellee's premises, and under the conditions and circumstances above set out, Self personally did not breach a duty owing to both the appellee and his wife. Pretermitting for the time any question of scope of agency, the question turns upon the remoteness and speculativeness of the damages. To say that, "since there can be no recovery for fright alone, it must necessarily follow that there can be no recovery for the consequences of fright" is plainly a non sequitur. Damages, when confined to fright alone, is dealing with a meta-physical, as contradistinguished from a physical, condition, with something subjective instead of objective, and entirely within the realm of speculation. So the damages suffered where the only manifestation is fright are too subtle and speculative to be capable of admeasurement by any standard known to the law; but when the damages are physical and objective as consequent upon the physical pain and incapacity manifested by and ensuing upon a miscarriage, the damages are quite as capable of being measured by a jury as if they had ensued from an impact or blow. Then the question recurs upon the second reason of the decisions above, to-wit: Are the damages

[Ala. Fuel & Iron Co. v. Baladoni.]

the proximate result of the negligence or of the fright? The primary cause is none the less the proximate cause because it happens to operate through successive instrumentalities; that is to say, where the injury naturally and probably ensues in unbroken sequence, uninfluenced or uncontrolled by an independent, intervening efficient cause, the injury is referred to the primary as the proximate cause. Here the firing of the pistol caused the fright, and the fright in turn so operated upon the nervous or physical system as to cause the miscarriage and injury, and the fright was but a link in the chain of causation, the injury being referred to the negligent act as the causa causans, setting in motion the agencies ultimating in the injury. See *Armstrong v. Montgomery*, 123 Ala. 233, 249, 26 South. 353; *M. & O. R. R. R. R. Co. v. Christian Moerlein Brewing Co.*, 146 Ala. 404, 41 South. 17; *Jones v. Union Foundry Co.*, 171 Ala. 225, 231, 55 South. 153. That such is the case, and that fright may not be said to be an intervening efficient, or proximate, cause of the injury, nor a concurrent cause, is borne out in the analogy of the law, for where one is placed in sudden peril, and but for his fright consequent thereon the injury would not have occurred, the injured person under the stress of emergency is not chargeable with contributory negligence if he fail to act as under ordinary circumstances he might, but the injury is referable solely to the primary, negligent act that set in motion the dangerous agency. If the wife was "far gone in pregnancy," as alleged in the complaint, this fact might have been noted by an ordinarily prudent man, and the question of a miscarriage might have been easily anticipated as a contingency likely to happen upon the firing of a pistol in the immediate presence of the wife and child.

(4) The doctrine of expediency or public policy—the third reason upon which some of the decisions above referred to are rested—is a doctrine that should be very sparingly and cautiously employed, for if a person's rights have been unlawfully invaded, it would ill become a court of justice to withhold its remedy on the ground of expediency. It may be that physical injuries springing out of fright are easily simulated and relief granted in such instances would open the door to fraud and imposture; but this is a matter involving the proof of the case and is addressed rather to the good sense and honesty of purpose of our juries than to the courts.

In the case of *Engle v. Simmons*, 148 Ala. 92, 95, 41 South. 1023 [7 L. R. A. (N. S.) 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 740], our Supreme Court quotes with approval a Texas case (*Hill v. Kimball*, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618) as follows: "That a physical, personal injury may be produced through a strong emotion of the mind there can be no doubt. The fact that it is more difficult to produce such an injury through the operation of the mind than by direct physical means affords no sufficient ground for refusing compensation in an action at law when the injury is intentionally or negligently inflicted. It may be more difficult to prove the connection between the alleged cause and the injury, but if it be proved, and the injury be the proximate result of the cause, we cannot say that a recovery should not be had. Here, according to the allegations of the petition, the defendant has produced a bodily injury by means of that emotion, and it is for that injury the recovery is sought."

Again in *Engle v. Simmons, supra*, our Supreme Court quotes with approval from *Brownback v. Frailey*, 78 Ill. App. 262, as follows: "One who goes to the house of a pregnant woman and flourishes a whip, and makes threats in a boisterous manner, is liable for her miscarriage and sickness resulting from fright proximately occasioned thereby, which fright he must have observed by the exercise of ordinary care, even though he did not know of the condition of her health."

In the case of *Louisville & Nashville R. R. Co. v. Melton*, 158 Ala. 511, 47 South. 1024, 1025 (23 L. R. A. [N. S.] 183) a recovery was had for the value of a horse that died from fright superinduced as a proximate result of defendant's negligence, the court observing: "The damages claimed are for the loss of the horse; and, if the loss was the direct and proximate result of the wrong of the defendant, it is immaterial as to the agency employed in causing the damage."

Consonant with the foregoing views may be cited *Purcell v. St. Paul City R. Co.*, 48 Minn. 135, 50 N. W. 1034, 16 L. R. A. 203; *Sloane v. So. Cal. R. R. Co.*, 111 Cal. 683, 44 Pac. 320, 32 L. R. A. 193; *Hill v. Kimball*, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618; *Oliver v. La Valle*, 36 Wis. 592; *Kimberly v. Howland*, 143 N. C. 398, 55 S. E. 778, 7 L. R. A. (N. S.) 545; *Watson v. Dilts*, 116 Iowa, 249, 89 N. W. 1068, 57 L. R. A. 559, 93 Am. St. Rep. 239; *Fitzpatrick v. Great Western R. Co.*, 12 Up. Can. Q. B. 645; *Pankopf v. Hinkley*, 141 Wis. 146, 123 N. W. 625, 24 L. R.

[Ala. Fuel & Iron Co. v. Baladoni.]

A. (N. S.) 1159; *Green v. Shoemaker,* 111 Md. 69, 73 Atl. 688, 23 L. R. A. (N. S.) 667; *St. Louis S. W. R. Co. v. Murdock,* 54 Tex. Civ. App. 249, 116 S. W. 139; *Chicago & N. W. R. Co. v. Hunerberg,* 16 Ill. App. 387; *Lehigh & H. R. Co. v. Marchant,* 84 Fed. 870, 28 C. C. A. 544, 55 U. S. App. 427; *Hickey v. Welch,* 91 Mo. App. 4; *Barbee v. Reese,* 60 Miss. 906; *Stutz v. Chicago & N. W. R. Co.,* 73 Wis. 147, 40 N. W. 653, 9 Am. St. Rep. 769; *Ill. Cent. R. R. Co. v. Latimer,* 128 Ill. 163, 21 N. E. 7; *Bell v. Great Northern R. Co.,* 26 L. R. Ir. 432; *Wilkinson v. Downtown,* 2 Q. B. 57; *Smith v. Pittsburg R. Co.,* 23 Ohio St. 10; *Goken v. Dallugge,* 72 Neb. 16, 99 N. W. 818, 101 N. W. 244, 103 N. W. 287, 9 Ann. Cas. 1222; 1 Thompson on Negligence, § 156; 1 Cooley on Torts (3d Ed.) 95.

As said above, numerous authorities hold contrary to the views herein expressed; many of them will be found collated in the following authorities: *Gulf, C. & S. F. Ry. Co. v. Hayter,* 93 Tex. 239, 54 S. W. 944, 47 L. R. A. 325, 77 Am. St. Rep. 862; 38 Cyc. 449, note 2; 8 R. C. L. 525, section 80, note 19; 1 Cooley on Torts (3d Ed.) 96, note 82; *Engle v. Simmons,* 148 Ala. 92, 41 South. 1023, 7 L. R. A. (N. S.) 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 742; *Spade v. Lynn & B. R. R. Co.,* 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512, 60 Am. St. Rep. 393; *Mitchell v. Rochester R. Co.,* 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604; *Sanderson v. Northern Pac. R. Co.,* 88 Minn. 162, 92 N. W. 542, 60 L. A. R. 403, 97 Am. St. Rep. 509.

Counsel insist, however, that it is not shown that the damages proximately flowed from any tort directed against the wife; but, on the contrary, her fright was purely vicarious suffering in her anxiety for the child. We cannot agree with this view. The wife was in her home, and had a right to the peaceful and undisturbed enjoyment thereof; and the negligent demeanor of Self in firing his pistol at the dog, especially in view of her then condition, was liable to inflict physical injury upon her as well mayhap the child. Speaking to this point, Judge Cooley observes: "But if there may be a recovery for physical injuries resulting from fright wrongfully caused by the defendant, it would seem that an assault committed in view of a [pregnant] woman whose presence is known, especially upon a member of her family, was an act of negligence towards the woman, a failure to exercise the due care towards her which the occasion and circumstances required, and was therefore a legal wrong against her which will

support an action, if damage follows."—1 Cooley on Torts (3d Ed.) 98.

And in support of the text Judge Cooley cites *Hill v. Kimball, supra,* cited with approval in *Engle v. Simmons, supra.* See, also, *Watson v. Dilts,* 116 Iowa 249, 28 N. W. 1068, 57 L. R. A. 559, 93 Am. St. Rep. 239.

We do not think prejudicial error is shown in any of the several exceptions relating to the admission of testimony (assignments 9 to 14, inclusive).

The written requests to charge are not numbered in the transcript, making comparison or cross-reference from refused to given charges awkward. Requests embraced in assignments of error Nos. 15 and 17 were properly refused in the state of the evidence, and, in view of what we have said above, being requests for the general affirmative charge.

(5) Request embraced in assignment No. 16 was properly refused, as it pretermitted consideration as to whether Self was acting in the line and scope of his authority as one charged with the duty of keeping order or policing the camp.

(6-9) Requests embraced in assignments Nos. 18, 19, 20, 21, and 22 were properly refused as invasive of the province of the jury; besides, of these, Nos. 18, 19, and 20 were argumentative, and 18 and 19 were further vicious, in that they singled out testimony. Moreover, No. 18 was substantially covered by an unnumbered given charge—the second from the bottom of page 5 of the transcript—and likewise No. 19 was substantially duplicated in a given charge on page 5 of transcript, being the third from the bottom of the page.

(10, 11) The charge given at the instance of the plaintiff, embraced in assignment No. 23, was properly given. The correctness of the conclusion of the jury as to whether the servant, in shooting the dog, was acting within the line and scope of his employment, or stepped outside thereof for purposes of his own, is not before us, in the absence of a motion for a new trial. Suffice it to say, the question of the scope of the servant's employment presented a mixed question of law and fact; and, being submitted to the jury under proper instruction from the court and upon given written charges, this issue of fact was determined adversely to appellant. We remark here that the master's liability was not affected by the fact that the servant charged with the duty of keeping order was also commissioned as a dep-

[Davenport v. The State.]

uty sheriff.—20 Am. & Eng. Ency. Law (2d Ed.) 177 (6), and cases in note 3; 26 Cyc. 1521 (111).

We find no reversible error, and the judgment of the court below is accordingly affirmed.

Affirmed.