JOHN W. ANDREWS, APPELLANT, V. ROBERT E. HASTINGS, APPELLEE.

FILED DECEMBER 14, 1909.    No. 15,838.

1. **Adverse Possession.** The statute of limitations will not run in favor of an occupant of real estate unless his possession is under a claim of right or ownership, but the mere fact that while in possession he has been under a mistake as to the correct boundary of his tract will not render his possession permissive nor toll the statute as to the land within his inclosure and without his true boundary.

2. **New Trial: NEWLY DISCOVERED EVIDENCE: DILIGENCE.** A litigant is not entitled to a new trial on the ground of newly discovered evidence, unless it appears that he exercised due diligence before trial to procure such evidence, and that he was not negligent in failing to produce it during the trial.

APPEAL from the district court for Fillmore county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Charles H. Sloan, F. W. Sloan* and *J. J. Burke,* for appellant.

*F. B. Donisthorpe* and *Burkett, Wilson & Brown,* contra.

ROOT, J.

This is an action at law to recover possession of a triangular shaped tract of land within defendant's inclosure. A jury was waived, the court found for defendant, and plaintiff appeals.

1. It is argued that, although defendant has occupied the premises for more than ten years next preceding the commencement of this action, his possession was not adverse to plaintiff's title, but permissive, and therefore the statute of limitations is not a defense to this action. Plaintiff owns the southwest quarter and defendant the southeast quarter of section 24, township 6, range 2, in Fillmore county. The field notes of the government survey of said section are not in evidence, but witnesses testified to monuments evidently constructed by the government surveyors to perpetuate the section corners. It appears that the section has been twice surveyed, and two distinct corners were established as the northwest corner of the section. The county surveyor in 1877 located a quarter section corner in the north line of the section. Prior thereto the respective owners of the northeast quarter and the northwest quarter of the section had fixed their boundary line with reference to the western of the northwest corners, but in subsequent litigation the eastern of said corners was established as the northwest corner of the section. The parties hereto constructed a boundary fence commencing at a point in the south line of their farms and immediately north of the quarter corner; from thence the fence was built north to a point in the half section line running east and west so as to join the fence first constructed by their neighbors on the north. If the quarter corner in the north line of the section, as established in the litigation above referred to, is correctly located, the north end of the fence, constructed by the parties hereto, is about 49 feet too far west; but if the western corner at the northwest corner of the section is the proper standard, the fence is correctly located. Plain-

tiff testifies, and is corroborated by other witnesses, that it was agreed between the parties at the time the fence was built that it should be constructed so as to extend south the line existing between their neighbors to the north; that, subsequent to the termination of the litigation between those neighbors, the witness spoke to defendant about moving their fence to conform to the true line as settled by said lawsuit, and it was agreed between them that, whenever the fence became out of repair, it should be moved to the true line. Defendant denies any such agreement, and while he testifies that he was not claiming any part of the southwest quarter of the section, but the southeast quarter only, he swears that their boundary line was agreed upon by himself and plaintiff and the fence constructed accordingly, and that subsequently he occupied all of the land in that section east of the fence under a claim of ownership.

Each party accuses the other of making no claim as of right to the land in dispute. It is true, as argued by plaintiff, that we have consistently held, since *Horbach v. Miller,* 4 Neb. 31, that occupation of real estate will not ripen into title unless that possession is adverse to the true owner and with the intent and purpose of the occupant of asserting ownership to the land. See *Ryan v. City of Lincoln, ante,* p. 539. But possession may be adverse without any declaration of hostility to the true owner. *City of Florence v. White,* 50 Neb. 516. The occupant's intention at the time he took possession is not necessarily a controlling factor. It is sufficient if possession is taken and the premises held for ten years under a claim of right or of ownership. *Fitzgerald v. Brewster,* 31 Neb. 51. If the agreement testified to by plaintiff was made, then defendant's possession was not adverse. However, the court's finding upon this proposition is supported by defendant's evidence, and as the action is one at law we are not authorized to vacate that finding because the evidence to support it is strongly contradicted.

It is suggested that, as neither party claimed more than

a quarter section, defendant's possession never was adverse. If it is assumed that the parties were deceived by the government monuments and the fence constructed by their neighbors, they could not have remained under that influence subsequent to the close of the litigation in 1881, which resulted in a correction of the line between the northeast quarter and the northwest quarter of the section. If a mutual mistake existed to that time, it must have terminated 25 years before this suit was commenced. From 1881, if not before, the rule announced in *Tex v. Pflug*, 24 Neb. 666, would apply, if it is admitted that the agreement testified to by plaintiff did not exist. *Levy v. Yerga*, 25 Neb. 764; *Obernalte v. Edgar*, 28 Neb. 70; *Baty v. Elrod*, 66 Neb. 735. While defendant does not assert title to more than a quarter section of land, it seems reasonably plain that he contends that the fence referred to marks the western boundary of that quarter. The evidence supports the judgment.

2. It is urged that the district court should have granted a new trial because of newly discovered evidence. During the trial plaintiff and his witnesses testified that the fence between the litigants' respective farms was built in 1879 and 1880. Defendant and two of his witnesses testified that it was constructed about 1886. Plaintiff, after judgment, produced affidavits of the former owners of the north half of section 24 and of various neighbors who depose to the fact that the fence was erected in 1878 or thereabouts. This testimony is material, but cumulative, and we do not feel justified in holding that its production would probably have changed the result of the litigation. Neither do we consider that plaintiff exercised due diligence to secure the depositions of the witnesses or their presence at the trial. Plaintiff deemed it material to prove that the fence was constructed in the fall of 1879 and the spring of 1880, and produced witnesses to sustain him on this point. He ought to have anticipated that defendant might attempt to controvert that testimony. The fact that plaintiff failed to appreciate

that a difference might exist in the recollection of witnesses concerning conditions existing 25 or 30 years ago will not justify a court in granting him a new trial to the end that he may corroborate his own testimony upon a controverted fact. Moreover, the district court is vested with discretion in disposing of applications for a new trial because of newly discovered evidence, and ordinarily its judgment will not be disturbed. *Grand Lodge, A. O. U. W., v. Bartes,* 69 Neb. 637.

The judgment of the district court therefore is

AFFIRMED.