RUDOLPH ZWEINER ET AL., APPELLEES, V. JAMES L. VEST,
APPELLANT.

FILED JUNE 23, 1914.   No. 17,717.

Adverse Possession. "If one by mistake inclose the land of another and
claim it as his own to certain fixed monuments or boundaries, his
actual and uninterrupted possession for the statutory period will work
a disseizin, and his title will be perfect." *Tex v. Pflug,* 24 Neb. 666.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*H. M. Sinclair* and *Fred A. Nye,* for appellant.

*W. D. Oldham* and *John A. Miller, contra.*

LETTON, J.

The controversy in this case is over the ownership of a
wedge-shaped tract of land 105 feet wide at the base. The
plaintiff asserts that it is a part of the northeast quarter
of section 13, township 11, range 17, in Buffalo county.
The defendant insists that the strip is within the bound-
aries of the southeast quarter of section 12,. in the same
township and range. The issues presented by the plead-
ings and the evidence are: First. What was the location
of the government quarter corner between sections 12 and
13? Second. Has the defendant obtained the title and
right of possession of the strip by virtue of adverse pos-
session?

In substance, the evidence on behalf of plaintiff is that
in 1911 he procured the line between sections 12 and 13
to be surveyed by one Edwards, who was then the county
surveyor; that they were unable to find any government
monument, and that the surveyor then placed a corner
stone according to the rules for establishing a lost corner,
which is the corner to which he claims. A number of wit-
nesses who had lived in the neighborhood from 20 to 30
years testified that they never saw a government mound

either at the point where plaintiff claims it should be or at the point where defendant claims it is. Another witness for plaintiff testified there was nothing to indicate where the corner should be, except that Mr. Seiben, who formerly owned the southwest quarter of section 12, about 18 years ago plowed about as far south as 'Mr. Moore had placed his fence; that Mr. Moore built his fence at the disputed corner 15 or 18 years ago. Plaintiff's evidence also shows that, after the Edwards' survey was made, Mr. Vest moved his fence 25 feet north of the new corner, and that about a year afterwards he moved it back to its former location. For defendant, Mr. Moore testified that he homesteaded the northeast quarter and made a timber culture entry on the southeast quarter of section 12, in 1879; that he lived on the land until he sold it to Mr. Vest about 7 years ago; that soon after he entered the land he found the government corner, and that there was a flat cedar stake in the mound; that he showed it to Mr. Seiben, who broke out his land accordingly; that about 1890 he built a north and south fence which joined the fence on the south line at the disputed corner; that these fences were maintained until he sold the place to Vest. He also testified that he had put in two ash stakes at the corner before he sold the land to Vest, and that when he and Mr. Morey, the county surveyor, went to find the corner they found a piece of stake where he told Mr. Moore the corner was. Morey testified that in 1911 he went to the point where Moore said the corner was and found the rotton points of three stakes about six or eight inches under the ground. He also testified that he had considerable experience in surveying in Buffalo county, and that his experience with quarter corners had been that he had found very few of them upon a straight line. Another witness, who lived upon the section east for many years, testified that he saw an old stake at the government corner after Moore's fence was built; that it was 8 or 12 feet south of the corner of the fence. The evidence is sufficient to uphold a verdict in favor of either party. Upon cross-examination Mr. Moore testified that when he built his fence on the west and south

side of his land he did not intend to take any land that was not included in the government survey, and never intended to claim any land outside of section 12, and that this was all that he conveyed to Mr. Vest by the deed. On redirect, however, he stated that when he sold he told Vest where he would find the corners, and that at that time he claimed all the land included within his fences, and also an extra rod on the south of the south fence.

The court correctly instructed the jury that the government monuments control courses and distances, and generally as to adverse possession. But it then gave this instruction: "The court instructs the jury that, if they believe from the evidence that defendant's grantor, Moore, built his fence according to his opinion as to the location of the government corners, and only claimed to own to' the corners, and that his fence so constructed extended beyond the government corners onto the land now owned by plaintiff, then such holding was not adverse to plaintiff, although it continued for more than ten years, and defendant cannot tack his holding to that of his grantor, Moore."

Defendant complains that the verdict is contrary to the instructions of the court, and especially complains of the giving of this instruction. This was evidently based upon the cross-examination of Mr. Moore. Moore's whole testimony is to the effect that from the time of making his entry he had always claimed title to the land as far as the government corner, which he says was there at that time; that he built his fences with reference to the same, and that he had always considered that this was the true corner.

It was said in *Tex v. Pflug,* 24 Neb. 666: "If one by mistake inclose the land of another and claim it as his own to certain fixed monuments or boundaries, his actual and uninterrupted possession for the statutory period will work a disseizin, and his title will be perfect." This rule was followed in *Levy v. Yerga,* 25 Neb. 764; *Obernalte v. Edgar,* 28 Neb. 70; *Baty v. Elrod,* 66 Neb. 735; and *Andrews v. Hastings,* 85 Neb. 548. It seems to be generally

so held. "Adverse Possession," 1 R. C. L., sec. 51, p. 733.

Plaintiff has cited a number of decisions from other states to the contrary, but we deem it sufficient to say that the rule in this state is otherwise. The instruction was erroneous and prejudicial to the defendant. The judgment of the district court is therefore

REVERSED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.