Carnahan v. Cummings.

---

LUCY CARNAHAN, APPELLEE, v. MARY CUMMINGS, APPELLANT.

FILED DECEMBER 4, 1920.   No. 21144.

1. Adverse Possession. Where a fence is constructed as upon the boundary between two properties and openly intended as a boundary-line fence, and where a party claims ownership of the land up to the fence for the full statutory period, and is not interrupted in his possession or control during that time, he will, by adverse possession, gain title to such land as may have been improperly inclosed with his own.

2. ———: REQUISITES. There must be claim of title, either actual or presumed from the circumstances, in order to acquire land by adverse possession, and, where title to land is claimed on the ground, as in this case, that it is part of a farm owned by plaintiff, it being a strip along the boundary inclosed by a boundary-line fence, it must appear that the plaintiff and his predecessors in interest either had title to the farm or that their possession was such as to show a claim of title to it throughout the period of adverse possession, since the nature of their claim to the disputed strip throughout the period would, under such circumstances, depend upon the general character of the claim that they were making to the farm.

3. ———: EVIDENCE: POSSESSION. In an action to determine title to land, based upon alleged adverse possession, it is improper to allow a witness to testify to his conclusion as to who was in possession of the land during the statutory period, since possession is one of the ultimate facts for the jury to determine.

4. Husband and Wife: TORTS: AGENCY. The mere fact that the wife was present when a tortious act is committed by her husband raises no presumption that the act was committed by him as her agent, even though the act has some connection with or reference to her separate estate, when it is not shown that she participated, nor that she encouraged or instigated him to do the act, and where there is no other evidence of agency.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE, *Reversed.*

*Bernard McNeny,* for appellant.

*George J. Marshall, contra.*

FLANSBURG, J.

Action in ejectment and for damages to the land. The strip of land in dispute lies along the boundary between the farm of plaintiff and that of defendant. Plaintiff sets up two causes of action: (1) To recover the land; and (2) for damages for alleged wrongful destruction by the defendant of trees upon the land. Defendant introduced no testimony and moved for a directed verdict, which motion was overruled. Plaintiff recovered a judgment on both causes of action, and defendant appeals.

Defendant contends that the evidence is insufficient to show title in the plaintiff.

Plaintiff owns the land to the east, and the defendant and her husband the land to the west, of the strip in controversy. The locust trees were planted upon the disputed strip in 1882 by Doctor Weston, then the owner of what is now the plaintiff's farm. The planting of these trees was some evidence of a proprietary claim to so much of the land in dispute upon which the trees were planted. In 1885, or 1886, F. L. Cross, then occupying what is now defendant's farm, built a fence a little to the west of the row of trees, and on what was accepted as the boundary line between the two farms. Shortly afterwards the plaintiff and her husband moved upon what is now the plaintiff's farm. Whether or not the plaintiff took title to this land at the time they first moved upon it is not shown. In fact, it nowhere appears in the record at what date she did acquire title to the land or first make claim of title to it; the only evidence being that she is now the owner. Testimony was introduced to the effect that, some 20 or 25 years prior to the commencement of this suit, though that matter is disputed in the record by the testimony of defendant's husband, defendant had asked permission of the plaintiff to build a stile over this fence. What answer plaintiff made, or whether the stile was constructed, however, does not appear, but the alleged incident, if found by the jury to be true, would disclose a mental attitude of the parties recognizing some right of the plaintiff to the control of the fence, or of the property lying to her side of it. It appears that the fence remained as originally placed until in 1914, when it is shown that defendant moved it by nailing the wires to the row of locust trees.

Though the fence may not have been built upon the true boundary, the rule in this state is well settled that, where a fence is constructed as upon the boundary and openly intended as a boundary-line fence, and where a party claims ownership of the land up to the fence for the full statutory period, and is not interrupted in his possession

or control during that time, he will, by adverse possession, gain title to such land as may have been improperly inclosed with his own. *Krumm v. Pillard,* 104 Neb. 335; *Zweiner v. Vest,* 96 Neb. 399; *Andrews v. Hastings,* 85 Neb. 548.

Though there is some evidence that the fence was. originally constructed as a boundary-line fence and was treated as such by the parties until it was moved in 1914, that proof, standing alone, is insufficient to bring the plaintiff within the rule above stated. It appears that, after the plaintiff and her husband moved upon the land, they remained for some years and then were followed by two other occupants. Whether the plaintiff and these occupants were tenants, or whether they had continuous or exclusive possession, does not appear, nor does it appear what the nature of their possession was. If the plaintiff and the other occupants owned the land adjacent to the strip in dispute during their respective occupancies, the fact that the fence was built and maintained as a boundary-line fence would, it is true, be sufficient evidence to show the possession and claim of ownership by these parties of all land enclosed by the fence with the property which they owned, although no actual use was made of the disputed strip.

Defendant claims that the plaintiff and the two occupants mentioned were allowed, over objections, to state their conclusions that they had held "possession" of all the land east of the fence, including the strip in dispute. Such testimony was erroneously admitted, for the entire claim of plaintiff must rest upon adverse possession under claim of title for a period of ten years prior to the time when the fence was removed, in 1914, and the question of possession was the ultimate fact to be determined by the jury. The conclusions of these witnesses cannot be treated as evidence, nor be considered as tending in any way to support the verdict.

Moreover, a claim of title, either actual or presumed, is necessary in order to acquire land by adverse possession.

*Ryan v. City of Lincoln,* 85 Neb. 539; *Andrews v. Hastings, supra.* In some cases the claim of title will be presumed when an adverse holding is shown for the statutory period, but in this case the possession of the strip was incidental to and of the same character of possession as was the possession of the farm, and it is neither shown that plaintiff had received the deed to the farm and held title during the period, nor are the facts sufficient to show that the plaintiff and the other occupants had such possession of the farm as to acquire title by adverse possession. The nature of their claim to the disputed strip of land, as being a part of the farm, depends entirely upon, and would be presumed, under such circumstances as are shown in this case, to be the same as the claim of title they are making to the farm itself; but, it is not shown that they had or claimed title to the farm during the period necessary for adverse possession, neither is it shown that they had or claimed title to the disputed strip, as being a part of the farm by reason of its being inclosed by a boundary-line fence.

It is the contention of the defendant that there is no evidence in the record from which a liability for damages, on plaintiff's second cause of action, could attach to the defendant, in any event, for the reason that it appears that defendant's husband cut down the trees, and that defendant herself, though present a part of the time, did not participate.

The record is not clear as to just what title defendant had to the farm of which they were in possession. Defendant's husband testified that both he and the defendant owned it together. He further testified that he cut the trees, and that, though his wife was present at several times, she did not participate, encourage or direct, and that he did it solely upon his own responsibility. His testimony is not contradicted. Plaintiff claims that a presumption arises that the husband acted as the agent of the wife, from the fact that she owned an interest in the farm; that

the cutting of the trees was intended as a benefit to her property; and that she was present and made no objection.

At common law, the rule was just the reverse of what is contended for here. The actions of the wife in the presence of her husband were presumed to have been committed under coercion, exercised by the husband upon the wife, and the wife was relieved from responsibility. That common-law status has been modified by statute in this state. *Goken v. Dallugge,* 72 Neb. 16.

By our statute (Rev. St. 1913, secs. 1560-1562) a married woman is allowed to acquire and control a separate estate and to engage in a trade or business on her separate account. Though at common law she could not be held liable in tort for the acts of her agent, since she could not contract—and agency was based upon contract—nevertheless, under the statutory authority to contract, just referred to, it is clear that she could now be held liable for the torts of her agent, when done within the scope of authority and with respect to her separate estate, even though that agent were her husband. *Atherton v. Barber,* 112 Minn. 523; *McMurtry v. Brown,* 6 Neb. 368. See note to *Kellar v. James* ( 63 W. Va. 139), 14 L. R. A. n. s. 1003.

The evidence here fails to bring the plaintiff's case within the rule, for neither is it shown that the defendant had such an interest in the farm as would constitute a separate estate under the definition of the statute (Rev. St. 1913, sec. 1560), nor is it shown that the defendant's husband acted as her agent in cutting down the trees. The mere fact that the wife was present when a tortious act was committed by her husband raises no presumption that the act was committed by him as her agent, even though the act has some connection with or reference to her separate estate, when it is not shown that she participated, encouraged or instigated him to do the act, and when there is no other evidence of agency. *Multer v. Knibbs,* 193 Mass. 556, 9 L. R. A. n. s. 322; *Rust-Owen Lumber Co. v. Holt,* 60 Neb. 80; *Goken v. Dallugge, supra; Kellar v. James,* 63 W. Va. 139, 14 L. R. A. n. s. 1003.

For the reasons given, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.