WAUBE, Administrator, Respondent, vs. WARRINGTON and others, Appellants.

*November 9, 1934—January 8, 1935.*

For the appellants there were briefs by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge.*

*Matthew M. Wallrich* of Shawano, for the respondent.

WICKHEM, J. In the statement of facts in both briefs it is said that deceased was looking out the window of her house watching her child cross the highway, and witnessed the negligent killing of the child by defendant. While upon a demurrer the sole question is whether the facts alleged in the complaint state a cause of action, we consider that the statement of facts concurred in by plaintiff and defendant constitutes an informal amendment to the complaint by stipulation, and will determine the questions presented as though the complaint were amended to conform to the statement of facts.

The question presented is whether under the Wisconsin equivalent of Lord Campbell's Act, decedent's husband may recover for her death under such circumstances. Under the provisions of sec. 331.03, Stats., in order that he may recover for her death, the circumstances must have been such as to have entitled Susie Waube, had she lived, to maintain an action for her injuries. *Koehler v. Waukesha Milk Co.* 190 Wis. 52, 208 N. W. 901. Thus the question presented is whether the mother of a child who, although not put in peril or fear of physical impact, sustains the shock of witnessing the negligent killing of her child, may recover for physical injuries caused by such fright or shock.

The problem must be approached at the outset from the view-point of the duty of defendant and the right of plaintiff, and not from the view-point of proximate cause. The right of the mother to recover must be based, first, upon the establishment of a duty on the part of defendant so to conduct herself with respect to the child as not to subject the mother to an unreasonable risk of shock or fright, and, second, upon the recognition of a legally protected right or interest on the part of the mother to be free from shock or fright occasioned by the peril of her child. It is not enough to find a breach of duty to the child, follow the consequences of such breach as far as the law of proximate cause will permit them to go, and then sustain a recovery for the mother if a physical injury to her by reason of shock or fright is held not too remote.

Upon this point we adopt and follow the doctrine of *Palsgraf v. Long Island R. R. Co.* 248 N. Y. 339, 162 N. E. 99. In that case the facts are thus stated by the court:

"Plaintiff was standing on a platform of defendant's railroad after buying a ticket to go to Rockaway Beach. A train stopped at the station, bound for another place. Two men ran forward to catch it. One of the men reached the platform of the car without mishap, though the train was al-

ready moving. The other man, carrying a package, jumped aboard the car, but seemed unsteady as if about to fall. A guard on the car, who had held the door open, reached forward to help him in, and another guard on the platform pushed him from behind. In this act, the package was dislodged, and fell upon the rails. It was a package of small size, about fifteen inches long, and was covered by a newspaper. In fact it contained fireworks, but there was nothing in its appearance to give notice of its contents. The fireworks when they fell exploded. The shock of the explosion threw down some scales at the other end of the platform, many feet away. The scales struck the plaintiff, causing injuries for which she sues."

The court, speaking through Judge CARDOZO, said:

"Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. . . . The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another. . . . The passenger far away, if the victim of a wrong at all, has a cause of action, not derivative, but original and primary. His claim to be protected against invasion of his bodily security is neither greater nor less because the act resulting in the invasion is a wrong to another far removed."

See also 27 Illinois Law Review, pp. 774, 775, in which Dean Green, referring to the case of *Hambrook v. Stokes Bros.* (1925), 1 K. B. 141, hereafter to be considered, stated:

"The only problem was whether defendants owed the wife a duty with respect to possible injury to herself as a result of their negligence in imperiling the lives of her children."

The right of a plaintiff to recover damages for nervous shock caused by negligence without actual impact has had an interesting history. See 34 Harvard Law Review, 260; 11 Cornell Law Quarterly, 513; 11 American Law Register, 141. In *Victoria Railways Commissioners v. Coultas* (1888), 13 A. C. 222, 226, it was held that plaintiff was not

entitled to recover such damages. In *Lehman v. Brooklyn City R. Co.* (1888), 47 Hun (N. Y.), 355, 356, the same doctrine was announced. This became the prevailing doctrine in this country. *Ewing v. Pittsburgh, C., C. & St. L. R. Co.* 147 Pa. St. 40, 23 Atl. 340; *Haile's Curator v. Texas & Pacific R. Co.* 60 Fed. 557, 9 C. C. A. 134; *Mitchell v. Rochester R. Co.* 151 N. Y. 107, 45 N. E. 354; *Spade v. Lynn & Boston R. Co.* 168 Mass. 285, 47 N. E. 88. This doctrine, however, was repudiated in a number of jurisdictions, including Wisconsin, in situations where fright without impact produced physical injuries. *Alabama Fuel & Iron Co. v. Baladoni,* 15 Ala. App. 316, 73 So. 205; *Lindley v. Knowlton,* 179 Cal. 298, 176 Pac. 440; *Goddard v. Watters,* 14 Ga. App. 722, 82 S. E. 304; *Watson v. Dilts,* 116 Iowa, 249, 89 N. W. 1068; *Whitsel v. Watts,* 98 Kan. 508, 159 Pac. 401; *Stewart v. Arkansas Southern R. Co.* 112 La. 764, 36 So. 676; *Green v. Shoemaker,* 111 Md. 69, 73 Atl. 688; *Purcell v. St. Paul City R. Co.* 48 Minn. 134, 50 N. W. 1034; *Kimberly v. Howland,* 143 N. C. 398, 55 S. E. 778; *Salmi v. Columbia & N. R. R. Co.* 75 Oreg. 200, 146 Pac. 819; *Simone v. Rhode Island Co.* 28 R. I. 186, 66 Atl. 202; *Mack v. South Bound R. Co.* 52 S. C. 323, 29 S. E. 905; *Sternhagen v. Kozel,* 40 S. D. 396, 167 N. W. 398; *Memphis St. R. Co. v. Bernstein,* 137 Tenn. 637, 194 S. W. 902; *Gulf, C. & S. F. R. Co. v. Hayter,* 93 Tex. 239, 54 S. W. 944; *O'Meara v. Russell,* 90 Wash. 557, 156 Pac. 550; *Pankopf v. Hinkley,* 141 Wis. 146, 123 N. W. 625; *Sundquist v. Madison Rys. Co.* 197 Wis. 83, 221 N. W. 392. See notes 11 A. L. R. 1119; 40 id. 983; 76 id. 681. In *Pankopf v. Hinkley, supra,* the conflict is noted and it is stated that the better reason favors the view that there is a cause of action for shock sustained without impact but resulting in physical injuries. It had previously been held in this state, in *Summerfield v. Western Union Tel. Co.* 87

Wis. 1, 57 N. W. 973, and *Gatzow v. Buening,* 106 Wis. 1, 20, 81 N. W. 1003, that where there was no impact, and where there were no subsequent physical injuries caused by fright, no cause of action existed. The rule followed in Wisconsin appears to represent the modern tendency and to be now the rule of the New York court. *Comstock v. Wilson,* 257 N. Y. 231, 177 N. E. 431, 76 A. L. R. 676. In jurisdictions following the liberal rule it has been held consistently, with but two exceptions, hereafter to be noted, that in order to give rise to a right of action grounded on negligent conduct, the emotional distress or shock must be occasioned by fear of personal injury to the person sustaining the shock, and not fear of injury to his property or to the person of another. *Dulieu v. White & Sons* (1901), 2 K. B. 669; *Sanderson v. Northern Pac. R. Co.* 88 Minn. 162, 92 N. W. 542; *Mahoney v. Dankwart,* 108 Iowa, 321, 79 N. W. 134; *McGee v. Vanover,* 148 Ky. 737, 147 S. W. 742; *Bucknam v. Great Northern R. Co.* 76 Minn. 373, 79 N. W. 98; *Cleveland, C., C. & St. L. R. Co. v. Stewart,* 24 Ind. App. 374, 381, 56 N. E. 917; *Southern R. Co. v. Jackson,* 146 Ga. 243, 91 S. E. 28.

Thus it may be said that the doctrine most favorable to plaintiff is not sufficiently broad to entitle him to recover. The question presented is whether there should be an extension of the rule to cases where defendant's conduct involves merely an unreasonable risk of causing harm to the child or spouse of the person sustaining injuries through fright or shock. There are two cases upon this point which deserve consideration in some detail. In *Spearman v. McCrary,* 4 Ala. App. 473, 58 So. 927, defendant's negligent operation of an automobile caused plaintiff's mule to take fright and run away. The mule was attached to a buggy from which plaintiff and her husband had just alighted but in which plaintiff's two children still remained. The damages alleged were shock and fright resulting in physical injuries. The

court there adopted the view that recovery could be had for shock or fright culminating in physical injury although caused without physical impact. The court approaches the problem from the standpoint of proximate cause, and does not discuss the precise point involved here, although in fact recovery appears to have been given for physical injuries sustained through fright occasioned by the peril of the children rather than that of the mother. In the situation presented by that case, however, plaintiff may well have suffered fright and shock as a result of fear for her own safety.

The only case squarely dealing with this problem is *Hambrook v. Stokes Bros.* (1925), 1 K. B. 141. In this case a servant of defendants was in charge of a motor-truck belonging to defendants, and parked it at the top of a hill on Dover street in Folkestone, leaving it unattended, with the motor running, and without taking proper precautions to prevent it from moving. During his absence the truck started to run down the hill. The street was narrow, being not more than six feet wide in some places, and there was a curve at the lower end of it. The truck eventually came to a standstill by reason of running against the side of a house at a point below the curve. On the day in question Mrs. Hambrook, whose house was at the bottom of Dover street, accompanied her three children, a girl and two boys, part of the distance on their way to school. She walked with them to a point a little below the curve in Dover street, and then left them. Shortly afterwards she saw the truck coming rapidly around the curve in her direction. She was not in any personal danger, as the truck stopped some distance short of where she was standing, and in any case she would have had ample opportunity to step into a position of safety. She immediately became fearful for the safety of her children. A crowd collected and there were rumors of an accident. She inquired who had been injured, and a friend stated that it was a little girl with glasses. It appeared that

her little girl wore glasses. She went to the hospital and found that her daughter had been injured. She sustained a severe shock and consequent physical injuries from which she died. The trial court directed the jury that if the nervous shock was caused by fear of her child's safety, as distinguished from her own, plaintiff could not recover. From a verdict in favor of defendants, plaintiff appealed. The judgment was set aside and a new trial granted for misdirection. The court reviewed the state of the English law with respect to this subject, pointing out that the *Coultas Case, supra,* had been modified, and recognizing also that the *Dulieu Case, supra,* had limited the recovery in fright cases to situations where the fright was occasioned by the peril of the person affrighted. Viewing the matter from the standpoint of proximate cause rather than duty, the court held that there should be no distinction between shock sustained by a mother as a result of fear for her own safety, and that sustained by reason of peril to her child. The court considered that defendant ought to have anticipated that if the unattended truck ran down this narrow street it might terrify some woman to such an extent, through fear of some immediate bodily injury to herself, that she would receive a mental shock with resultant physical injuries, and that defendant ought also to have anticipated that such a shock might result from the peril to the child of such a woman. While the majority, mistakenly, as it seems to us, approach this problem from the standpoint of proximate cause, the dissenting opinion of SARGANT, L. J., approaches it from the standpoint of duty. The dissenting opinion concedes that since it was defendant's duty to exercise due care in the management of his vehicle so as to avoid physical injury to those on or near the highway, this duty cannot be limited to physical injuries caused by actual physical impact. The dissenting opinion, however, states that the matter is quite

different where the shock to plaintiff is due, not to immediate fear of personal impact, but to the sight or apprehension of impact upon a third person. Reference is made to the unreported case of *Smith v. Johnson & Co.,* referred to by WRIGHT, J., in his judgment in *Wilkinson v. Downton* (1897), 2 Q. B. 57, 61. There the plaintiff became ill from the shock of seeing another killed, the death being due to the negligence of the defendant. It was held that the plaintiff could not recover, not on the ground that the harm was too remote, "but on (what is often practically equivalent) a consideration of the extent of the duty of the defendant towards the plaintiff and others on and near the highway." The dissenting opinion then states that "it would be a considerable and unwarranted extension of the duty of owners of vehicles towards others in or near the highway, if it were held to include an obligation not to do anything to render them liable to harm through nervous shock caused by the sight or apprehension of damage to third persons." The dissenting opinion concludes that there is no sound reason for erecting an exception in favor of the mother of a child, and points out that once the defendant's duty is held to extend to those outside the field of physical peril, a doctrine is stated to which no rational boundaries can be erected.

The American Law Institute, in its Restatement of Torts, thus states the law:

"§ 313. *Emotional Distress Unintended.*

"If the actor unintentionally causes emotional distress to another, he is liable to the other for illness or bodily harm of which the distress is a legal cause if the actor

"(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

"(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm."

It is thus recognized that as the law exists, there is no liability for fright, negligently occasioned, where that fright or shock is the result of knowledge of the injury or peril of a third person. The Institute, however, adds a caveat as follows:

"The Institute expresses no opinion as to whether an actor whose conduct is negligent as involving an unreasonable risk of causing bodily harm to a child or spouse is liable for an illness or other bodily harm caused to the parent or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock which is the legal cause of the parent's or spouse's illness or other bodily harm."

Whether this caveat was added because of a difference of opinion, a dearth of authority, or a consideration of the English case is immaterial. At any rate, there is no authority except the English case, and possibly the Alabama case, for extending the duty of the defendant as contended for by plaintiff in this case, nor do we think that sound principle calls for such an extension.

With due deference to the learned judges who concurred in the decision, we cannot escape the conclusion that the determination in the *Hambrook Case* is incorrect, both in its initial approach and in its conclusion, and that the doctrine contended for by plaintiff, and there approved, would constitute an unwarranted enlargement of the duties of users of the highway. Fundamentally, defendant's duty was to use ordinary care to avoid physical injury to those who would be put in physical peril, as that term is commonly understood, by conduct on his part falling short of that standard. It is one thing to say that as to those who are put in peril of physical impact, impact is immaterial if physical injury is caused by shock arising from the peril. It is the foundation of cases holding to this liberal ruling, that the person affrighted or sustaining shock was actually put in peril of physical impact, and under these conditions it was consid-

ered immaterial that the physical impact did not materialize. It is quite another thing to say that those who are out of the field of physical danger through impact shall have a legally protected right to be free from emotional distress occasioned by the peril of others, when that distress results in physical impairment. The answer to this question cannot be reached solely by logic, nor is it clear that it can be entirely disposed of by a consideration of what the defendant ought reasonably to have anticipated as a consequence of his wrong. The answer must be reached by balancing the social interests involved in order to ascertain how far defendant's duty and plaintiff's right may justly and expediently be extended. It is our conclusion that they can neither justly nor expediently be extended to any recovery for physical injuries sustained by one out of the range of ordinary physical peril as a result of the shock of witnessing another's danger. Such consequences are so unusual and extraordinary, viewed after the event, that a user of the highway may be said not to subject others to an unreasonable risk of them by the careless management of his vehicle. Furthermore, the liability imposed by such a doctrine is wholly out of proportion to the culpability of the negligent tort-feasor, would put an unreasonable burden upon users of the highway, open the way to fraudulent claims, and enter a field that has no sensible or just stopping point.

It was recognized by the court in the *Hambrook Case* that had the mother there merely been told of the injury to her child, instead of having been virtually a witness to the transaction, there would have been no liability. The court thus selected at least one arbitrary boundary for the extension. While there is no suggestion in the caveat attached to Restatement, Torts, § 313 (b), as to what the proper rule should be, it is implied that any possible extension of the rule as stated would be limited, (1) to the relationship of

parent and child or husband and wife, and, (2) to persons sustaining the shock as a result of witnessing the peril. It was suggested in the dissenting opinion in the *Hambrook Case* that if the mother may recover, why not a child whose shock was occasioned by the peril of the mother? It is not necessary to multiply these illustrations. They can be made as numerous as the varying degrees of human relationship, and they shade into each other in such a way as to leave no definite or clear-cut stopping place for the suggested doctrine, short of a recovery for every person who has sustained physical injuries as a result of shock or emotional distress by reason of seeing or hearing of the peril or injury of another. No court has gone this far, and we think no court should go this far. It is our view that fairness and justice, as well as expediency, require the defendant's duty to be defined as heretofore stated, in accordance with the weight of liberal authority and the general statement of the rule by the American Law Institute. Human wrong-doing is seldom limited in its injurious effects to the immediate actors in a particular event. More frequently than not, a chain of results is set up that visits evil consequences far and wide. While from the standpoint of good morals and good citizenship the wrong-doer may be said to violate a duty to those who suffer from the wrong, the law finds it necessary, for reasons heretofore considered, to attach practical and just limits to the legal consequences of the wrongful act. As was said by the New York court, speaking through Judge CARDOZO, in *Palsgraf v. Long Island R. R. Co., supra:*

"Negligence is not a tort unless it results in the commission of a wrong, and the commission of a wrong imports the violation of a right, in this case, we are told, the right to be protected against interference with one's bodily security. But bodily security is protected, not against all forms of interference or aggression, but only against some. One who seeks redress at law does not make out a cause of

action by showing without more that there has been damage to his person. If the harm was not willful, he must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended. Affront to personality is still the keynote of the wrong."

The allegations in plaintiff's complaint do not bring the interest of Susie Waube within the field of legally protected rights.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer.