Christian T. ANGST, as Special Administrator of the Estate of William M. Haley, Plaintiff,

v.

GREAT NORTHERN RAILWAY COMPANY, a corporation, Defendant.
Civ. A. No. 4940.

United States District Court
D. Minnesota, Fourth Division.
April 21, 1955.

---

W. P. Westphal, St. Paul, Minn., for defendant in support of the motion.

William A. Cole, Minneapolis, Minn., for plaintiff in opposition thereto.

NORDBYE, Chief Judge.

This is a wrongful death action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The decedent, William M. Haley, was, at the time of his death, a conductor of a train performing certain switching duties near the Falsen gravel pit in North Dakota. The main railroad track near this pit runs northwest and southeast and passes the Falsen pit on the south. There is an auxiliary track or siding which runs parallel to the main track for some 1,900 feet before turning north toward the pit itself. There are two switches which may turn cars bound northwesterly onto this siding. These switches are 1,494.4 feet apart, and will be referred to as the east switch and the west switch. The train in charge of Haley had come from the northwest and its assignment was to pick up some outfit cars standing at the east end of the

siding, a short distance off the main track. Haley instructed the train crew regarding the type of switching operations to be conducted, and then got off the train at the west switch. The train proceeded on past the east switch and then proceeded in an attempt to couple the caboose onto the east end of the outfit cars. This was to be accomplished by running the train westerly along the main track at about four to twelve miles per hour, releasing the caboose and "running away from it" and then switching the moving caboose off onto the siding. Due to the conceded negligence of brakeman Quandt, the engine itself was switched onto the siding and collided with the outfit cars. This collision was not severe; no cars were damaged, and certain occupants of the outfit cars received only minor injuries. The plaintiff herein contends that, as a direct and proximate result of this accident, Haley received injuries and was caused to exert himself in a strenuous physical activity which caused his death.

The depositions on file, which apparently include the testimony of all available eyewitnesses to the occurrence, disclose that Haley was some 1,400 feet from the scene of the collision when it occurred and that after the accident he was seen near the west switch, walking along the main track. Thereafter, he gave additional instructions to brakeman Quandt about switching that remained to be done. At this time he did not appear excited. Haley telephoned the Verendrye depot and notified the district roadmaster of the occurrence. After the arrival of the roadmaster and about twenty minutes after the accident, Haley fell to the ground, gasping for breath, and died. The deposition of Dr. Paul J. Breslich, who performed an autopsy upon the body of Haley, shows that Haley had been suffering for some time from coronary arteriosclerosis, that there was no evidence of any other disease, and that Haley could have died from a heart attack brought on by strenuous physical or emotional activity occurring shortly before his death.

Plaintiff's counsel, in opposition to this motion for summary judgment, has filed with the Court his own affidavit to the effect that Haley, although not in the immediate vicinity of the collision, was in a position to see what was going to happen and started running for the switch and waving his arms. There is an absence of any showing in the depositions or otherwise which supports counsel's statement in this regard. The complete answer to the question of the relevancy on this kind of an affidavit on a motion for summary judgment is found in Rule 56(e), Federal Rules of Civil Procedure, 28 U.S.C.A., which states that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The only issue raised, therefore, is whether there can be recovery for the physical consequences of fright or shock which results from seeing another person placed in peril by the defendant's conduct. The preliminary question whether there can ever be recovery for injuries brought on by fright where there is no physical impact is not raised here. Defendant apparently concedes that if Haley had been put in personal danger by its conduct, then it would not matter that the threatened impact did not actually occur, if his shock was the proximate result of that personal peril. Therefore, the cases of Urie v. Thompson, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Miller v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 1949, 177 F.2d 224, and Williams v. Atlantic Coast Line R. Co., 5 Cir., 1951, 190 F.2d 744, cited by plaintiff, are not in point.

It must be held at the outset that the defendant's negligence toward the occupants of the outfit cars, though conceded, does not in any respect enhance plaintiff's claim that Haley was entitled to be protected against invasion of his emotional security. It has been stated repeatedly that negligence is a

term of relation, and that a plaintiff cannot recover on the basis of a breach of a duty owed to a third person, but must show a "wrong" to himself. See Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253; Boyd v. City of Duluth, 1914, 126 Minn. 33, 147 N.W. 710; 2 Restatement, Torts § 281 comment c. This rule has been accepted by the federal courts both as part of the law of admiralty, see Sinram v. Pennsylvania R. Co., 2 Cir., 1932, 61 F.2d 767, and as part of the Federal Employers' Liability Act. See Chesapeake & Ohio R. Co. v. Mihas, 1929, 280 U.S. 102, 50 S.Ct. 42, 74 L.Ed. 207; Chesapeake & Ohio R. Co. v. Nixon, 1926, 271 U.S. 218, 220, 46 S.Ct. 495, 70 L.Ed. 914; Carfelo v. Delaware, L. & W. R. Co., 2 Cir., 1931, 54 F.2d 475; Norfolk & W. R. Co. v. Kratzer, 6 Cir., 1930, 37 F.2d 522. This view seems in keeping with the fundamental basis for the imposition of liability for unintended harm. If negligence consists of exposing another to an unreasonable risk, liability should not be extended to one placed in no foreseeable risk by the defendant's conduct. The defendant's liability should, it would seem, be limited by the reasons creating it, and since liability is imposed because a defendant has ignored the interests of an injured person, that liability cannot logically be extended to one whose interests the defendant has not disregarded. The primary issue is one of defendant's duty to the deceased, not that of proximate cause. The question presented, therefore, is whether the plaintiff's interest in emotional and physical security is legally protectible against the particular kind of conduct disclosed by the evidence.

Upon the uncontradicted showing made herein, it would seem that, as a matter of law, plaintiff cannot recover from the defendant for injuries caused to Haley by the shock of perceiving the collision between the engine and the outfit cars. No reasonable person could find that the brakeman, who here failed to throw the switch properly which would have kept the engine on the main track and heading toward Haley, could have foreseen that his failure to throw the switch would cause emotional distress to Haley so severe as to result in physical harm. Surely, the possibility that such could be the result of the brakeman's inaction is so remote that his failure to take such a possibility into account could not be labeled negligence as to Haley. The risk created by his conduct was that persons or property near the unintended path of the engine would be harmed. It is apparent that Haley was wholly outside that risk. Any boundary fixed to limit the responsibility of an actor for the harm he causes must be somewhat arbitrary. But a line must somewhere be drawn, and the Court is persuaded that to impose liability for emotional distress arising solely because of Haley's concern for the safety of the men in the outfit cars or the company's property would be wholly out of proportion to the culpability of the brakeman's conduct.

There are numerous authorities supporting this proposition of law. See Minkus v. Coca Cola Bottling Co., D.C. N.D.Cal.1942, 44 F.Supp. 10; Kelly v. Fretz, 1937, 19 Cal.App.2d 356, 65 P.2d 914; Cleveland, C., C. & St. L. Ry. Co. v. Stewart, 1900, 24 Ind.App. 374, 56 N. E. 917; State, for Use of Aronoff v. Baltimore Transit Co., 1951, 197 Md. 528, 80 A.2d 13, 28 A.L.R.2d 1062; Sanderson v. Northern Pac. R., 1902, 88 Minn. 162, 92 N.W. 542, 60 L.R.A. 403; Cote v. Litawa, 1950, 96 N.H. 174, 71 A.2d 792, 18 A.L.R.2d 216; Nuckles v. Tennessee Electric Power Co., 1927, 155 Tenn. 611, 299 S.W. 775; Carey v. Pure Distributing Corp., 1939, 133 Tex. 31, 124 S.W. 2d 847; Waube v. Warrington, 1935, 216 Wis. 603, 258 N.W. 497, 98 A.L.R. 394; 2 Restatement, Torts § 312 comment e. These cases hold as a matter of law that the plaintiff could not recover for physical injuries caused by the emotional distress of witnessing a third person's peril. Many involve facts which would seem to plead more strongly for an extension of the liability for negligent conduct than does the instant case. The reason given

for the limitation is that "once the defendant's duty is held to extend to those outside the field of physical peril, a doctrine is stated to which no rational boundaries can be erected." Waube v. Warrington, supra [216 Wis. 603, 258 N.W.· 500]; Minkus v. Coca Cola Bottling Co., supra.

The cases relied upon by plaintiff as contrary to this proposition are not persuasive in view of the factual situation disclosed herein. In Spearman v. McCrary, 1912, 4 Ala.App. 473, 58 So. 927, a mother was allowed to recover for shock resulting when the defendant's negligence frightened a mule pulling a buggy with plaintiff's two children. The objection urged in the instant case, however, was not raised. The defendant there contended only that there could be no recovery for emotional distress in the absence of physical impact upon plaintiff's person. The court treated the case as one where the plaintiff was put in personal peril rather than as one where the only danger was to her children. In Gulf, C. & ·S. F. R. Co. v. Coopwood, Tex.Civ.App., 1906, 96 S.W. 102, the plaintiff had purchased tickets for the transportation of herself and her invalid daughter. The defendant was negligent toward plaintiff and toward her daughter in ejecting them from the train. It was held that as part of plaintiff's damages she could recover for the mental distress caused by the mistreatment of her daughter. However, in a later case growing out of the same transaction, Gulf, C. & S. F. R. Co. v. Overton, 1908, 101 Tex. 583, 110 S.W. 736, 19 L. R.A.,N.S., 500, it was held that another daughter of the plaintiff in the first action, also in the party, could not recover for emotional distress caused by mistreatment of her sister. The court explained the result in the Coopwood case as being based upon the contractual duty owed to the mother as purchaser of the tickets. In Cohn v. Ansonia Realty Co., 1914, 162 App.Div. 791, 148 N.Y.S. 39, the plaintiff and her children lived on the ground floor of an apartment building. The elevator operator of that building was negligent toward all of them in leaving the elevator open and unguarded. Plaintiff's children ran into the elevator and started it upward, leaving the outer gate to the elevator shaft also open. The plaintiff fainted and fell into the shaft. The court felt that the defendant should have known that someone might have started the elevator, that the outer door would be left open and that another would fall into it. Thus this case does not hold that there may be recovery for shock where the only risk created by the defendant's conduct is a risk of injury to a third person. On the contrary, the court holds that the defendant's negligence was in creating a situation likely to bring about physical harm to the plaintiff herself, and when the very harm threatened did in fact result, it was immaterial that that result was brought about in a somewhat indirect manner. Rasmussen v. Benson, 1937, 133 Neb. 449, 275 N.W. 674, 122 A.L.R. 1468, sustained recovery for loss of livestock and for injuries due to distress resulting when defendant negligently sold poisoned bran to plaintiff to feed to his dairy cows. Plaintiff's mental distress was in part occasioned by his fear that his dairy customers would be poisoned by drinking the milk from the poisoned cows. Extraordinary efforts were made by him to warn his customers of their assumed peril. The court concluded that the negligence of defendant toward the plaintiff manifested itself to both his person and his property. On rehearing, 135 Neb. 232, 280 N.W. 890, 122 A.L.R. 1475, the court adhered to its original decision, two judges dissenting. In that case the negligence of defendant toward plaintiff was a jury question, and whether or not one agrees with the conclusions of that court as to proximate cause, that decision is not persuasive authority for plaintiff's claim herein.

■ It may be that in certain limited situations, severe emotional distress to a person not directly threatened with physical harm might be not only a foreseeable, but a natural and probable re-

sult of the defendant's actions. For example, in Alabama Fuel & Iron Co. v. Baladoni, 1916, 15 Ala.App. 316, 73 So. 205, the defendant came upon plaintiff's property and fired a gun at a dog near her child playing a few feet away from her. The plaintiff was obviously pregnant and the result of defendant's conduct was that plaintiff had a miscarriage. The Alabama court held that the plaintiff could recover upon such a showing. However, upon the record presented in the instant case, the Court is of the opinion that the plaintiff's case would fall within the scope of those authorities holding that severe emotional distress resulting from witnessing a third person's peril is too extraordinary and remote a consequence of negligence toward a third person to be compensatory.

■■ There is not the slightest basis for plaintiff's suggestion in his brief that this case falls within the scope of those authorities holding that one who negligently places another in peril is responsible also for injuries caused to one who attempts to rescue those in peril. Rovinski v. Rowe, 6 Cir., 1942, 131 F. 2d 687; Henry v. Cleveland, C., C. & St. L. R. Co., C.C.S.D.Ill.1895, 67 F. 426; Liming v. Illinois Central R. Co., 1890, 81 Iowa 246, 47 N.W. 66; Duff v. Bemidji Motor Service Co., 1941, 210 Minn. 456, 299 N.W. 196; Arnold v. Northern States Power Co., 1941, 209 Minn. 551, 297 N.W. 182; Perpich v. Leetonia Mining Co., 1912, 118 Minn. 508, 137 N.W. 12; 2 Restatement, Torts § 294 comment a. Apparently this rule is motivated by the view that it is not unreasonable to include among the class to whom the defendant owed a duty, those who may suddenly try to extricate others whom he exposes. But whether this rule should be extended to rescue cases involving only physical consequences of overexertion, fright, or shock, need not be considered. Here, there is no showing that Haley attempted to rescue any-

body. Not only is there an absence of any such showing on this motion, but the depositions of all the eyewitnesses who saw Haley state that, instead of going to rescue anyone upon the happening of the accident, he proceeded to continue with his duties as conductor and telephoned the roadmaster of the occurrence and awaited the latter's arrival. It was after the roadmaster's arrival and when walking towards the scene of the accident some twenty minutes thereafter that he fell dead from a coronary arteriosclerosis. And even assuming, as plaintiff's counsel states in his affidavit, that Haley was seen running from the switch waving his arms prior to the collision, it is apparent that such conduct was not directed to the rescue of anyone involved in the accident. Haley did not approach the scene of the accident until some twenty minutes after it had occurred and, as stated, at that time he and the roadmaster were walking quietly towards the scene of the accident. It would defeat the very purpose of summary judgment procedure to hold that, merely because the bare allegation in the complaint setting forth that Haley became excited and exerted himself in strenuous physical activity may be broad enough to encompass the rescue theory, a material issue of fact, therefore, is raised on this motion for summary judgment. There is no indication that a trial would disclose any material facts in addition to those which are now before the Court on this motion. And those facts must control whether there is a material issue to be tried, not the formal issues presented in the pleadings.

After due consideration, the Court is of the opinion that the showing herein demonstrates conclusively that there is not a material issue of fact to be tried, and therefore defendant is entitled to judgment. Let judgment be entered accordingly. It is so ordered. An exception is allowed.