LOUIS CAPUTZAL, PLAINTIFF-RESPONDENT, v. THE LIND-
SAY COMPANY, A BODY CORPORATE AND/OR UNION
TANK CAR COMPANY, A BODY CORPORATE, DEFEND-
ANTS-APPELLANTS.

Argued May 24, 1966—Decided September 7, 1966.

Mr. *John W. Taylor* argued the cause for defendants-appellants.

Mr. *Thomas F. Shebell, Jr.* argued the cause for plaintiff-respondent (Mr. *Thomas F. Shebell,* attorney; Mr. *Shebell, Jr.,* on the brief).

The opinion of the court was delivered by

HALL, J. This is a products liability case in which the Law Division granted defendants' motion for summary judgment. The Appellate Division reversed in an unreported opinion and we granted certification on the defendants' petition. 46 *N. J.* 312 (1966).

The claim is a bizarre one. The evidence before the trial court on the motion derived from plaintiff's own testimony in a deposition taken by defendants. Early in November 1961, he purchased a water softener for his home which was manufactured, sold and installed by defendants. The installation was completed on November 9 and it functioned without difficulty until November 23. Plaintiff, a factory worker, had been out of employment for several weeks because of a fractured ankle sustained at work. His wife was away. Very early that morning he drew water from a faucet in the

kitchen sink and made coffee. He did not look at the water and could not say whether it was discolored. He drank the coffee without any ill effect. A half to three quarters of an hour later, he turned on a faucet in the bathroom to brush his teeth and saw that the water coming from it was brownish or rusty in color. He did not put any of it in his mouth, but, assuming that the water with which he made the coffee was similarly discolored, thought he had been poisoned "in the stomach." "* * * I started to get faint and all shook up and nervous and sweating, and I laid down and just breathing hard." A heart attack immediately ensued and he was hospitalized for about three weeks. He returned to his job about a month after his return from the hospital.

The complaint alleged both breach of warranty (actually, strict liability in tort, see *Cintrone v. Hertz Truck Leasing & Rental Service,* 45 *N. J.* 434, 450 (1965)) and negligence on the part of defendants. (The result we reach does not depend on any distinction between the theories.) The contention is that the water softener was defective either in manufacture or in the manner of installation so that iron or other substances removed from the original state of the water by the apparatus somehow ultimately was returned to the lines in the house causing the rusty discoloration. Plaintiff does not contend that the condition of the water was harmful in itself to a human being or that any internal physical injury to him in fact ensued from the water, even though it could be inferred that the coffee had been made from water equally discolored. He does say rather that the heart attack was brought on only by fear or fright, at the sight of the brownish water, that he had been poisoned by drinking the coffee. In other words, his thesis is that the illness which followed was caused by psychic stimuli. His counsel represented to the court that he was prepared to present expert medical testimony at trial to that effect. While plaintiff offered no formal proofs in opposition to defendants' summary judgment motion, we shall assume, as defendants do, that the factual contentions outlined could be *prima facie* established by proper trial evidence.

Defendants' argument at the trial level, with which the judge agreed, was that, so viewing plaintiff's claim, his ailment was induced solely by emotional shock or fright without any physical contact and therefore was not recognizable under the state of our law at the time. On plaintiff's appeal to the Appellate Division, he urged that there was a sufficient minimum physical contact in the drinking of the coffee or, alternatively, that our law should be changed to allow liability in such situations regardless of the absence of physical contact. Before argument in the Appellate Division, the opinion in *Falzone v. Busch,* 45 *N. J.* 559 (1965), was handed down. The Appellate Division's decision was simply a statement saying essentially that the holding in *Falzone* would permit recovery in the instant type of case. The effect was that the summary judgment was set aside and the matter remanded for plenary trial.

We think the Appellate Division read *Falzone* too broadly. The holding has to be evaluated in the light of the facts of that case. The matter came up on the sufficiency of the complaint which alleged that the plaintiff was sitting in a parked automobile and that her husband was standing in a field adjacent to the road and was struck by defendant's negligently driven automobile. The car thereafter "veered across the highway and headed in the direction of this plaintiff," coming "so close to plaintiff as to put her in fear for her safety," as a direct result of which she became ill. (45 *N. J.,* at *p.* 561) It was in this context that we concluded: "We hold, therefore, that where negligence causes fright *from a reasonable fear of immediate personal injury,* which fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if such bodily injury or sickness would be regarded as proper elements of damage had they occurred as a consequence of direct physical injury rather than fright." (45 *N. J.,* at *p.* 569; emphasis added)

We were speaking of "reasonable fear of personal injury" in the sense of a reasonably apprehended physical impact

upon the person of the type involved in *Falzone* and similarly in *Ward v. West Jersey & Seashore R. R. Co.*, 65 *N. J. L.* 383 (*Sup. Ct.* 1900), which *Falzone* overruled. The holding did not encompass consequences of fears of the kind the plaintiff Caputzal says he underwent, quite apart from the question of whether his fear could be said to be "reasonable." A line of cases still viable, however, is that in which recovery was allowed against a manufacturer on a fact finding that the plaintiff suffered a minor and not extraordinary gastric disturbance after swallowing a foreign substance, even a harmless one, contained in food or drink. *E. g., Cassini v. Curtis Candy Co.*, 113 *N. J. L.* 91 (*Sup. Ct.* 1934) ; *Sheenan v. Coca-Cola Bottling Co. of New York, Inc.*, 41 *N. J. Super.* 213 (*App. Div.* 1956), certification denied 22 *N. J.* 268 (1956).

Beyond what we have just said and approaching the problem in the instant case from the more broadly analytical angle involving usual tort concepts, we are convinced there should be no liability in this type of injury. Although this aspect was touched upon in the briefs of the parties rather lightly, it was adequately explored at oral argument. As has been indicated, in the posture in which the case is presented we must assume the truth of a defective apparatus or installation which would ordinarily give rise to some liability for personal injury, on the theory either of strict liability in tort (warranty) or negligence, and of a psychic physical consequence. The question is whether liability therefor should be imposed on a manufacturer, seller or installer, although the principles involved are equally applicable to other kinds of defendants and, indeed, with respect to other types of distant consequences. The two applicable concepts in the case of nonintentional conduct or failure to act are the very basic ones of duty, and the breach thereof, and proximate, or legal, cause of the injury complained of.

The first is modernly summarized by Dean Prosser as :

"1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others *against unreasonable risks.*

2. A failure on his part to conform to the standard required. These two elements go to make up what the courts have usually called negligence; but the term quite frequently is applied to the second alone. Thus it may be said that the defendant was negligent, but is not liable because he was under no duty to the plaintiff not to be." *Prosser, Torts*, § 30, *p*. 146 (*3d ed*. 1964) (emphasis supplied)

The Restatement speaks similarly of negligent conduct as:

"* * * an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another * * *" *Restatement, Torts 2d* § 284.

■■ This hypothetical standard conventionally brings into play the matter of "foreseeability" in determining what the reasonable man should recognize as involving an unreasonable risk of harm. Foreseeability is not solely a mere matter of logic, since anything is foreseeable, but frequently involves questions of policy as well. When it does, the matter is one for determination by the court and not by the fact-finder. *Goldberg v. Housing Authority of City of Newark*, 38 *N. J.* 578 (1962) ; *Morril v. Morril*, 104 *N. J. L.* 557, 561 (*E. & A.* 1928). Chief Justice Weintraub makes the point well in *Goldberg*. There the plaintiff, a tradesman, was attacked and robbed by unknown persons in a multi-building, high-rise public housing development operated by the defendant. He sought to establish liability for his injuries on the thesis that the defendant had a duty to provide police protection. In finding no such duty as a matter of law, the Chief Justice said:

"The question whether a private party must provide protection for another is not solved merely by recourse to 'foreseeability.' Everyone can foresee the commission of crime virtually anywhere and at any time. * * *

The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. Whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." (38 *N. J.*, at *p*. 583).

In the instant case it is much too fanciful to say, from the point of view of fairness, that a reasonable manufacturer, seller or installer of water softeners should be held to recognize that he would create an unreasonable risk of any substantial physical injury whatever to anyone by the defect here involved, let alone a heart attack. The situation seems somewhat analogous to that in *Maiorino v. Weco Products Co.*, 45 *N. J.* 570 (1965), where a toothbrush manufacturer was held not responsible in strict liability in tort for the physical consequences of an improper use of the container in which the product was packed. The court said (at *p.* 574) : "A manufacturer or seller is entitled to expect a normal use of his product. The reach of the doctrine of strict liability in tort in favor of the consumer should not be extended so as to negate that expectation."

 The specific principles applicable in the very type of case before us are succinctly set forth by Harper and James:

"* * * Generally defendant's standard of conduct is measured by the reactions to be expected of normal persons. Ordinarily he does not have the duty to be careful not to shock or frighten people. Activity may be geared to a workaday world rather than to the hypersensitive. It may be otherwise, however, if defendant has knowledge or notice of the presence of idiosyncracy in any given case. This, of course, is the application of a pervading principle of tort law." 2 *Harper and James, The Law of Torts*, § 18.4, *p.* 1035 (1956).

The authors go on to say that in the case of injury or sickness brought on by emotional disturbance, liability should depend on the defendant's foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted, thus then bringing the plaintiff within the "zone of risk." (at *p.* 1036)

██ It cannot rationally be disputed that the occurrence of the heart attack from psychic stimuli here was an extraordinary occurrence, not reasonably to be expected in a normal person and so must have constituted an idiosyncratic reaction by this particular plaintiff. This subject has received most thorough and scholarly consideration by an eminent medico-

legal authority. Smith, "Relation of Emotions to Injury and Disease: Legal Liability For Psychic Stimuli," 30 *Va. L. Rev.* 193 (1944). Dr. Smith tells us "that only an extremely harrowing psychic stimulus creates any substantial risk of injury to a person of average constitution" and that courts are entitled to take judicial notice of that medical fact. (at *pp.* 264–265) He concludes:

"* * * Despite impressions prevalent in some quarters, psychic stimuli such as fright do not usually produce physical injury or disability in an average person. Production of transient disability from nervous shock calls for violent stimulation; production of serious injury calls for an idiosyncratic or impaired subject.
\* \* \* \* \* \* \* \*
* * * If the psychic stimulus was not calculated to injure an average person, there is no negligence and no liability for injury suffered by an idiosyncratic plaintiff." (at *pp.* 302, 303)

See also *Restatement, Torts 2d* § 313(1), comment c.

We entirely agree and consequently conclude as a matter of law that there is no basis for liability in this case.[1]

▮ Recovery for the type of result here involved is denied in many cases also on the ground of lack of proximate cause, which we should briefly mention. Utilization of that term to draw judicial lines beyond which liability will not be extended is fundamentally as an instrument of fairness and policy, although the conclusion is frequently expressed in the confusing language of causation, "foreseeability" and "natural and probable consequences." Many years ago a case in this State hit it on the head when it was said that the determination of proximate cause by a court is to be based " 'upon mixed con-

---

[1] It may be noted that we are not concerned with the different question of the basis of liability for physical injuries or illnesses claimed to be suffered by an allergic plaintiff from the use, wearing or ingestion of consumer articles intended for such purposes. See, e. g., *Zirpola v. Adam Hat Stores, Inc.*, 122 *N. J. L.* 21 (*E. & A.* 1939) ; *Reynolds v. Sun Ray Drug Co.*, 135 *N. J. L.* 475 (*E. & A.* 1947). See also Freedman, "A Hatband and a Tube of Lipstick: The New Jersey Minority Rule on Allergic Responses," 43 *U. Det. L. J.* 355 (1966) ; Noel, "Manufacturer's Negligence of Design or Directions for Use of a Product," 71 *Yale L. J.* 816, 865 (1962).

siderations of logic, common sense, justice, policy and precedent.'" *Powers v. Standard Oil Co.*, 98 *N. J. L.* 730, 734 (*Sup. Ct.* 1923), affirmed o. b. 98 *N. J. L.* 893 (*E. & A.* 1923). Dean Prosser puts it well in this fashion:

"As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

This limitation is sometimes, although rather infrequently, one of the fact of causation. More often it is purely one of policy, of our more or less inadequately expressed ideas of what justice demands, or of administrative possibility and convenience, none of which have any connection with questions of causation at all." (*Prosser, op cit. supra, pp.* 240–41).

Thus the current Restatement contains this qualification, very appropriate in this case:

"* * * The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." *Restatement, Torts 2d,* § 435(2).

See also Reporter's Notes in Appendix § 435(2), *pp.* 150–152.

 The idea of non-liability for the highly extraordinary consequence as a question of law for the court has already been recognized in this state. See *Glaser v. Hackensack Water Co.*, 49 *N. J. Super.* 591, 597 (*App. Div.* 1958); *Lutz v. Westwood Transportation Co.*, 31 *N. J. Super.* 285, 290 (*App. Div.* 1954), certif. denied 16 *N. J.* 205 (1954). Indeed, it was inferentially applied to affirm a judgment of involuntary dismissal in *Glaser*. There the defendant's employee went into plaintiff's garage to read the water meter. Plaintiff was on the second floor of the house and did not know who was entering her property. She became panicky, fearing for the safety of her infant child on the first floor, and ran rapidly down the stairs. In doing so, she fell and fractured her ankle. Her unsuccessful suit sought to recover damages

for that injury. Another notable instance in our courts of denying liability for remote consequences, implicitly on policy grounds but expressed in the conventional terminology of nonforeseeability and of the results not being the natural and probable consequence of the negligent act, is found in the opinion of Judge Burling (later Justice Burling of this court) in *Rickards v. Sun Oil Co.*, 23 *N. J. Misc.* 89, 41 *A. 2d* 267 (*Sup. Ct.* 1945). There defendant's barge, allegedly through negligent operation, destroyed the only bridge between an island community and the mainland. The plaintiffs, businessmen on the island, brought suits for loss of business profits occasioned by the impossibility of transportation to and from the island, due to the absence of the bridge. The court struck the complaints as not setting forth causes of action, finding that legally "the alleged wrong was not the natural and proximate result of defendant's negligence." (23 *N. J. Misc.*, at *p.* 95)

We have no hesitancy in determining here that plaintiff's heart attack, caused by psychic stimuli, was, under the facts before us, so highly extraordinary a result of any conduct of defendants that any acts or omissions of theirs should not be held to be the legal cause thereof.

From the standpoint of specific precedent on analogous facts, plaintiff has not cited to us any cases upholding his position. Our own research has disclosed only decisions, involving results from psychic stimuli, which support the conclusion we have reached, on one thesis or another. Among such cases we may mention *Angst v. Great Northern Railway Company*, 131 *F. Supp.* 156 (*D. Minn.* 1955) (Plaintiff's decedent, a train conductor, witnessed a slight railroad collision said to have been negligently caused by defendant and fell dead of a heart attack a few minutes later; no liability because the attack was "too extraordinary and remote a consequence" of the negligence.); *State for Use of Aronoff v. Baltimore Transit Co.*, 197 *Md.* 528, 80 *A. 2d* 13 (1951) (Plaintiff's decedent was in the plate glass business; while on an installation, he saw his truck struck by defendant's

street car, allegedly negligently, a number of glass plates being shattered; plaintiff suffered a heart attack and died an hour later; no liability); *Sahuc v. United States Fidelity & Guaranty Company*, 320 *F. 2d* 18 (5 *Cir.* 1963) (Plaintiff's farm was largely destroyed by fire allegedly caused by defendant's insured's breach of warranty in selling a heater which was not fit for the purpose intended; he suffered emotional upset after being summoned to the fire; no liability); *Williamson v. Bennett*, 251 *N. C.* 498, 112 *S. E. 2d* 48 (*Sup. Ct.* 1960) (Plaintiff was involved in a minor automobile collision with defendant due to latter's negligence; she mistakenly feared she had also struck a child on a bicycle. Thereafter she developed a severe neurosis. No liability, court finding it highly extraordinary that defendant's conduct caused the harm); *Kelly v. Lowney & Williams, Inc.*, 113 *Mont.* 385, 126 *P. 2d* 486 (*Sup. Ct.* 1942) (Defendant's automobile salesman demonstrating a car to a prospective customer who could not drive but who got behind the wheel. The car went in motion out of control and struck the home of plaintiff's decedent, who thought an explosion had occurred. She became sick and died as a result; no liability); *Corey v. Hiberly*, 346 *F. 2d* 368 (7 *Cir.* 1965) (Plaintiff, a volunteer fireman, responded to a fire allegedly negligently caused by defendants; while fighting the fire he dropped dead of a coronary occlusion; no liability, the heart attack being found too remote and not proximately caused by the negligence).

The judgment of the Appellate Division is reversed and that of the Law Division reinstated.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO — 6.

*For affirmance* — None.