Raymond LEANNAIS and Catherine Leannais, Plaintiffs,

v.

CINCINNATI, INCORPORATED, Cincinnati-Forte Company, and Liberty Mutual Insurance Company, Defendants.

No. 76–C–327.

United States District Court,
E. D. Wisconsin.

Nov. 30, 1979.

John A. Hamell, Jr., Rausch, Hamell, Ehrle & Strum, Milwaukee, Wis., for plaintiffs.

James R. Gass, Kasdorf, Dall, Lewis & Swietlik, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a diversity action brought by the plaintiffs for damages they allegedly sustained when plaintiff Raymond Leannais was injured while operating a coil slitter machine at Fullerton Metal Company in Milwaukee, Wisconsin. The machine was manufactured by Forte Equipment Company (Forte). The defendant Cincinnati, Incorporated (Cincinnati) is the alleged corporate successor of the original manufacturer.

On September 17, 1976, the Court granted Cincinnati's motion for summary judgment in this matter. Subsequently, the plaintiffs appealed this decision to the Seventh Circuit Court of Appeals. On appeal, the seventh circuit held that the defendant did not come within one of the four exceptions to the general rule "that a corporation

which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1979). The Court also held that summary judgment was appropriate in regard to the plaintiffs' allegations based on strict liability and negligent design and manufacture of the machine.

The appellate court, however, reversed this Court's determination of summary judgment on the plaintiffs' allegation that Cincinnati breached a legal duty to warn the plaintiff's employer of the hazards associated with the coil slitter. In reversing and remanding this case, the seventh circuit opined that the question of whether a duty to warn existed and was breached was a factual question not appropriate for summary judgment. The court also set out some of the criteria for this Court to consider in determining whether a duty to warn existed.

The central question is whether Cincinnati derived any actual or potential economic benefit from its relationship with the plaintiff's employer. In considering this possible economic benefit, the Court stated the salient factors to be considered were "whether the particular machine involved was under a service contract, whether Cincinnati had ever serviced the machine, or whether Cincinnati had information on present or prior ownership of Forte-built machines." *Id.* at 442.

On July 17, 1979, this Court conducted a two-day evidentiary hearing to determine whether the defendant had a legal duty to warn the plaintiff's employer. At that time, the plaintiffs took the posture that the hearing was improper and unnecessary because the seventh circuit had determined that the existence of a duty and its breach were questions of fact for the jury and not a legal determination for the Court. Furthermore, the plaintiffs asserted that any decision to limit liability in this case for public policy reasons should be made after a jury trial in accordance with what they perceived to be Wisconsin practice.

The defendants contended that the Court should determine whether a duty to warn exists before the case proceeded any further. Essentially, the conflict between these two approaches revolves around two famous opinions in *Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928). As all students of the law are aware, that case involved the question of whether the defendant should be held liable for an injury sustained by the plaintiff when a scale on the railroad platform fell over as the result of a package exploding when it was dropped by a boarding passenger. *Id.* 162 N.E. at 99. In determining the basic issue of public policy, the majority and dissenting opinions of Justices Cardozo and Andrews respectively took very divergent views of the method of analysis.

Justice Cardozo concluded that the defendant was not negligent in the action because it owed no duty to the plaintiff. Justice Cardozo opined that negligence could not be viewed or considered in the abstract and that for a person to be liable for a negligent act, he must have owed a duty to the person injured. Furthermore, Justice Cardozo found that the plaintiff was not a foreseeable person within the zone of danger of the defendant's action. In making this determination on a motion to dismiss, Justice Cardozo established the precedent of limiting liability in the first instance on a finding of no duty owing to the plaintiff before the case proceeds to trial.

Justice Andrews' dissent took a very different approach to the issue of limiting liability for public policy reasons. Justice Andrews opined that, rather than arbitrarily draw a distinction between possible plaintiffs whom a defendant may owe a duty to, the proper analysis is to consider whether the injury was proximately caused by the defendant's action. Justice Andrews' opinion was premised on his belief that:

> [E]very one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others. . . . Not only is he wronged to whom harm might reasonably

be expected to result, but he also who is in fact injured even if he be outside what would generally be thought the danger zone. There needs be duty due the one complaining, but this is not a duty to a particular individual because as to him harm might be expected. Harm to some one being the natural result of the act, not only that one alone, but all those in fact injured may complain. *Id.* 162 N.E. at 103.

Under Justice Andrews' theory, a person is liable for any injury to any person, foreseeable or not, that is proximately caused by the person's negligence. Justice Andrews' focus on the question of proximate cause as opposed to duty and foreseeability necessitated that the public policy determination regarding liability be made after a jury had considered the issue. Only then would Justice Andrews have the court determine whether liability should be imposed as a matter of public policy. Although Justice Andrews' method appears to allow a court to second-guess a jury determination of proximate cause, it really does nothing more than draw a line cutting off liability when it is too attenuated, not as a matter of fact, but as a matter of public policy.

Although the majority of courts have chosen to follow the majority opinion in *Palsgraf*, a few have adopted Justice Andrews' approach. In Wisconsin, the supreme court in *Waube v. Warrington*, 216 Wis. 603, 258 N.W. 497 (1935) appeared to adopt the Cardozo theory of foreseeability. In *Waube, supra,* the court held that a mother who viewed her daughter being hit by an automobile was not entitled to recovery from the defendant because she was not a foreseeable plaintiff and there was no impact. *Id.* at 613, 258 N.W. 497.

In subsequent decisions beginning with *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W.2d 29 (1952), the supreme court retreated from its position in *Waube, supra,* and began to adopt the reasoning of Justice Andrews. In *Pfeifer,* the court cast doubt on the logic of Justice Cardozo's theory of foreseeability because it might preclude the court from limiting liability in appropriate cases where the injured party was foreseeable. The alternative, according to the court, was an artificial categorizing of the plaintiff as nonforeseeable. In *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956), the court laid to rest its *Waube* decision and adopted a general public policy approach.

In *Colla v. Mandella,* 1 Wis.2d 594, 85 N.W.2d 345 (1957), the court summarizes its public policy position stating:

It is recognized by this and other courts that even when the chain of causation is complete and direct, recovery against the negligent tortfeasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too "wholly out of proportion to the culpability of the negligent tortfeasor," or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way to fraudulent claims, or would "enter a field that has no sensible or just stopping point." *Id.* at 598–99, 85 N.W.2d at 348.

Finally, in *A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 214 N.W.2d 764 (1974), the Wisconsin court capsulized the prior cases and indicated that these cases had adopted the minority opinion of Justice Andrews in *Palsgraf. Id.* In categorizing a defendant's duty, the *A. E. Investment Corp.* court held that "[a] defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition he is liable to unforeseeable plaintiffs." *Id.* at 484, 214 N.W.2d at 766.

Although this language is very similar to the language of the *Palsgraf* minority, at least one commentator has concluded that

the Wisconsin practice is not exactly similar to Justice Andrews' theory, but rather a hybrid analysis based on public policy and not just proximate cause. *See* The Existence of Duty in Wisconsin Negligence Cases, 61 Marq.L.Rev. 447 (1978). After a thorough review of the case law, the author concluded that the Wisconsin method for limiting liability ordinarily occurs only after the "elements of duty and cause have been established." *Id.* at 461–62, 214 N.W.2d 764. Although a factor in the latter public policy determination, the element of causation is separate and distinct from it.

■ Although the Wisconsin approach set forth above does not totally abrogate the concept of duty, it is much less of a concern than other matters of public policy. The concept of duty is still used to establish negligence, but it is only a general duty owing not to a particular person, but to the society at large. Thus, under Wisconsin law, if one owes a duty to someone, then anyone injured from a breach of that duty might recover absent public policy considerations. It is also clear from the above discussion that a court should ordinarily first determine if there is some general duty owing and then, only after trial, if a duty exists, should a court apply public policy consideration to limit liability.

Thus, under Wisconsin law, this Court must determine first whether there is some duty to warn owing by the defendant to any owner of its predecessor's coil slitter machine. If this Court determines a general duty exists, the Court may then, after trial, determine whether under the public policy considerations laid out by the Wisconsin Supreme Court in *Colla, supra*, it should limit the defendant's liability in this case.

■ Reviewing the factors the seventh circuit enunciated in its *Leannais* opinion in light of the Wisconsin adoption of Justice Andrews' minority opinion in *Palsgraf*, a conflict becomes readily apparent. The factors set forth by the seventh circuit are factors which would, if found to exist, tend to establish a particular duty to Leannais' employer. The particularization of a duty

to this plaintiff is not something required under Wisconsin law. *See A. E. Investors, supra.* The Court, however, finds that the factors set forth by the seventh circuit are germane to this Court's task of determining whether any duty to warn exists. Parenthetically, this Court notes that its determination that a duty does or does not exist does not foreclose the jury from making a different determination, nor does it foreclose the Court from limiting the defendant's liability later if it deems it appropriate.

■ The evidence adduced at the evidentiary hearing demonstrates that when Cincinnati-Forte and then Cincinnati took over the assets of Forte, it did not establish any safety program to monitor or research the potential hazards of the slitter machine. It further demonstrates that the defendant did not keep very good records regarding reported accidents on the machines. The defendant admits it was aware of the Miller accident which occurred prior to the Leannais accident, but defendant contends that the Miller accident was so unique that there was no reason to notify any other users of the machine. It is also clear from the Miller report and others submitted that the defendant, when asked, did make certain recommendations to enhance the safety of the machines.

There was also testimony at the hearing which indicated that all persons in the industry were aware of the potential hazards involved in the operation of the machines. Much of this evidence, however, seems to focus on the issue of causation, *i. e.*, that even if the defendant had warned the plaintiff's employer, it would not have prevented the accident. The information, however, is not relevant to the determination the Court must make today.

The evidence also showed that Cincinnati had provided certain replacement parts to the plaintiff's employer and was aware of the existence of the machine. It was also indicated that Cincinnati had available to it, although in some disarray, lists of owners of its predecessor's machines. Further-

more, the correspondence between Cincinnati and Fullerton, the plaintiff's employer, demonstrates there was an ongoing business relationship between them.

The evidence failed, however, to demonstrate that this machine was any more dangerous than other machines or that there was any service contract between the defendant Cincinnati and Fullerton.

Notwithstanding the lack of a service contract or agreement between Cincinnati and Fullerton, the Court finds that there is a sufficient amount of evidence to establish that Cincinnati, after it was notified of the Miller accident, had a duty to warn prior owners of Forte machines of the potential hazards involved in operating those machines. The Court notes that plaintiff has argued that the defendant not only had a duty to warn prior owners, but also an affirmative obligation to investigate and study the machine to develop safety features. The Court, however, finds that such an affirmative duty to conduct and develop safety programs for machines it did not design or manufacture would be too burdensome to require of the defendant and would forestall such acquisitions as this one in the future. This is not to say, however, that if Cincinnati had become aware of safety features through the development of its own machine, or from other sources, that it was not under a duty to pass this information along to prior owners.

Because the prior owners represent potential customers and therefore potential economic benefit to Cincinnati, the Court must conclude that it has at least the minimal duty to warn those prior owners of dangers associated with the machine when they become aware of them. Based on the foregoing, this Court has set a pretrial conference in this case for 9:00 A.M., Thursday, January 3, 1980.

SO ORDERED this 30th day of November, 1979, at Milwaukee, Wisconsin.